**Kathryn C. JONES, Plaintiff,**

v.

**Max CLELAND, as Administrator of Veterans Affairs, Veterans Administration, United States of America, Defendant.**

Civ. A. No. 77–G–1206–W.

United States District Court,
N. D. Alabama, W. D.

Sept. 28, 1978.
Memorandum Opinion Feb. 22, 1979.

Alvin T. Prestwood, Montgomery, Ala., for plaintiff.

Caryl P. Privett, Asst. U. S. Atty., J. R. Brooks, U. S. Atty., Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

This is an action under 42 U.S.C. § 2000e–16(c) and 29 U.S.C. § 633a(c), for discrimination against the plaintiff based on her sex and, alternatively, her age. The plaintiff, Kathryn C. Jones, is a white female, age 57, who has been continuously employed with the Veterans Administration Hospital in Tuscaloosa, Alabama, since June 1965. She was initially employed as a Clerk-Stenographer on the GS–3 level, and is currently employed as a Clerk-Stenographer on the GS–5 level. The defendant, Max Cleland, is the Administrator of Veterans Affairs with the Veterans Administration. Both parties have stipulated to the court's jurisdiction.

On September 3, 1976, the plaintiff applied for a vacant position as Volunteer Services Officer Trainee, on the GS–7 level. The plaintiff was not selected for the position, but was passed over in favor of a younger male. The plaintiff alleges that her nonselection for the position of Volunteer Services Officer Trainee was due to discrimination against her because of her sex and, alternatively, her age. This court finds the evidence sufficient to support the plaintiff's claim.

The facts in this case show that the plaintiff is a good employee, and capable of performing at a job level higher than the one she presently occupies. In addition, the evidence shows that the plaintiff has been unjustly treated by the Veterans Administration Hospital. The only question is whether this unjust treatment was due to her sex or age, and thus actionable under 42 U.S.C. § 2000e–16(a) or 29 U.S.C. § 633a (1974 amendments).

One fact which this court finds particularly revealing, although certainly not conclusive of this controversy, is that the plaintiff is the only person employed with the Veterans Administration Hospital in Tuscaloosa who has a college degree, has passed the Federal Service Entrance Examination and has twelve or more years service with the hospital, yet is employed on the GS–5 level or below. This is despite the evidence which showed that the plaintiff was a good and capable employee. All those testifying in this action spoke well of her and her ability.

When the plaintiff initially began her employment with the hospital in 1965, she was eligible for reinstatement based on her prior term of service with the federal government, but she was nevertheless required to compete for the position and serve a one-year probationary period after being selected. Moreover, in her thirteen years of service to the hospital, she has twice seen positions she was occupying abolished, necessitating her transfer to other positions. Testimony at the trial indicated that it was almost unheard of that this would happen twice to one employee.

After the second time her position was abolished, the plaintiff was transferred to the outpatient area of the admissions office, where she was not even provided with a desk or chair, but was forced to stand and work at a counter. Two of the plaintiff's co-workers in the same area, however, were provided desks and chairs, as was the plaintiff's replacement in that position.

The specific facts giving rise to the plaintiff's complaint began to unfold in August 1976, when the hospital announced that it was accepting applications for the position of Volunteer Services Officer Trainee. The plaintiff filed an application for this position on September 3, 1976. On September 24, 1976, a memorandum was sent to the plaintiff, notifying her that she had been found not to be qualified for the position because she had not met the "specialized experience requirements."

The plaintiff then requested, and was granted, an interview with a Personnel Management Specialist employed by the hospital. Before the interview was scheduled to take place, the plaintiff talked with one of the other applicants and discovered that he had been declared qualified due to his special experience in working with volunteers. Upon learning this, the plaintiff recontacted the Personnel Management Specialist and informed her that she had had certain experience working with volunteers which she had not included upon her application. This additional experience was taken into consideration by Mr. John Tilley, Chief of Volunteer Services of the hospital, who made the appointment decision. But additional credit, to which the plaintiff was entitled for her further work with volunteers while serving as secretary to the Chief of Psychiatry Service, was overlooked.

On October 7, 1976, the plaintiff was notified that although she had been qualified, she had not been selected. The plaintiff promptly filed a complaint based on age and sex discrimination which was investigated by Robert Dawson, Jr., E.E.O. Officer and Hospital Director, who concluded that there had not been discrimination. This conclusion was affirmed by a hearing examiner appointed by the Office of the General Counsel of the Veterans Administration. The plaintiff filed this suit on September 7, 1977.

■ The requirements for plaintiff's prima facie showing under her Title VII theory were established by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Paraphrasing these guidelines to fit the present case, plaintiff must show and has shown four things:

(1) that she is a member of a protected class;

(2) that she applied and was qualified for a job for which the employer was accepting applications;

(3) that despite her qualifications, she was not selected; and

(4) that a male was selected.

That this approach is similarly sufficient for suits under the Age Discrimination in Employment Act (ADEA) was confirmed by the Fifth Circuit in *Wilson v. Sealtest Foods Division of Kraftco Corp.*, 501 F.2d 84 (5th Cir. 1974), and reasserted by that court just last year in *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir. 1977), and *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir. 1977).

██ It appears to the court that the plaintiff has presented a prima facie case of both sex and age discrimination. She has met the threshold burden, and while she must continue to carry the burden of persuasion, it behooves the defendant to rebut a prima facie showing of discrimination in employment. This principle, first developed in *McDonnell-Douglas, supra*, was restated by the Supreme Court this summer in a Title VII case, *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). It is also the rule of this circuit in age discrimination actions, as set out in *Bittar v. Air Canada*, 512 F.2d 582 (5th Cir. 1975).

It falls to the defendant, then, to point to the absence of discrimination in the decision not to select the plaintiff, "proving that he based his employment decision on a legitimate consideration, and not an illegitimate one." *Furnco Construction Corp., supra*. This court does not believe that the defendant has met that burden. That the hospital did, in a close choice, hire a much younger male from half a continent away and without even an interview, over an older female working in its own office and having many years of capable service behind her, is immediately suspect. While this court does not intend to cast any reflection upon Mr. Tilley's veracity, the point remains that if he relied on age or sex even subconsciously in making his decision, he has discriminated against the plaintiff.

The defendant has tried to rebut the plaintiff's prima facie case by showing the selection of a better qualified applicant. The court cannot agree with the defendant on this point. Not only is this defense very weak when the two applicants were as closely matched as in this instance, but also the applicant selected over the plaintiff was chosen only because the plaintiff's application did not accurately reflect the full extent of her experience in working with volunteers.

The failure of the plaintiff's application fully to advise the defendant of her qualifications is due primarily to a lack of assistance and guidance from the hospital to the plaintiff in the preparation of her application. The testimony showed that the entire burden of recounting an applicant's experience is placed on the applicant. This places older employees at a disadvantage in applying for promotions against younger employees. The older employees would have a much more difficult time in recounting their presumably more extensive experience, which they often must delineate without the aid of accurate employment records.

More importantly, placing on the job applicant the entire burden of preparing the job application and seeing that the correct information is included contravenes the affirmative action plan adopted by the hospital on August 25, 1975. That plan reads in pertinent part:

Part D III. Full Utilization of the Present Skills of Employees.

A. *Current Situation* :

Despite the large number of positions filled by reassignment and promotion from within the V.A., minorities and women tend to be concentrated at the lower grade levels and in certain occupational fields.

B. *Objectives* :

To identify employees with under- or non-utilized skills and facilitate their movement into positions in keeping with their abilities and skills.

*Actions*

1. Review individual attainments and potential of present employees to determine extent to which they may have been underutilized.

There is a total lack of evidence showing any significant degree of implementation of this program. Rather, in establishing her prima facie case, the plaintiff has presented undisputed evidence of the defendant's knowing failure to comply with its own affirmative action plan and regulations.

Had the affirmative action plan been followed properly, the burden would not have been placed entirely on the plaintiff to ascertain that her application contained all pertinent facets of her long term of service with the hospital. Under the plan it was incumbent on the Personnel Management Specialist to insure that the plaintiff's application was properly prepared. A simple interview beforehand, with an explanation of the factors the hospital considered important, undoubtedly would have been sufficient. By the hospital's failure to implement its affirmative action plan, however, the plaintiff was disadvantaged in competing for the position. Even so, the choice between the plaintiff and the selected applicant was admittedly a very tough one for Mr. Tilley, who was responsible for the decision. Had the plaintiff received proper assistance in preparing her application, and had she been told what factors in her experience would bear the most weight, she would have been selected, barring any impermissible considerations, such as her age or sex. The defendant has failed to rebut this portion of the plaintiff's prima facie case. He has failed to show that, had the affirmative action plan been fully implemented, as required by law, the plaintiff would not have been chosen for the job. Absent such proof, the defendant has not satisfied the burden placed upon him by the Supreme Court in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Specifically, the court held that defenses promulgated by a defendant must be designed to meet the prima facie case presented by the plaintiff. 431 U.S. at 360, n. 46, 97 S.Ct. 1843.

From the evidence before the court, it must be concluded that the government adopted a plan to help utilize the skills of underemployed workers, then failed to follow the plan. This seems to have been the major reason for the nonselection of the plaintiff. Thus the defense of having selected the better qualified applicant is especially untenable. It would be unjust to allow the hospital to rebut the plaintiff's prima facie case by showing that the reason she was not selected stemmed from the hospital's own failure to implement its affirmative action plan. The guidelines called for the hospital to seek out, identify and assist underutilized employees. Yet in this case they placed the entire burden on the plaintiff to show that she was qualified for the position which she sought. This had a discriminatory effect against the plaintiff relative to her age and long years of service.

■ The affirmative action plan and its adherence *vel non* by the defendant is of critical importance to this controversy. Due process of law requires an agency of the government to follow its own rules and regulations. This requirement was not met. The court is therefore compelled to find that defendant did discriminate against the plaintiff by its nonfeasance with regard to the plan. Further, by evidence of such disregard, the defendant's intentional discrimination against the plaintiff has been made out as to her nonselection with reference to this promotion. *See, Predmore v. Allen*, 407 F.Supp. 1067 (D.Md. 1976). Thus, whereas discrimination must be shown to have been intended, in suits against the government, this obligation has been satisfied here: the knowing disregard by the defendant and his minions of the Veterans Administration's own affirmative action regulations manifests intent on their part. *See, Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1977).

■ Pursuant to the evidence considered, the court is of the opinion that the plaintiff, Kathryn C. Jones, has made out a good

prima facie case of intentional employment discrimination against her on the basis of her age, which the defendant has failed to rebut. Under the ADEA, 29 U.S.C. § 633a, judgment must therefore be entered in favor of the plaintiff. Alternatively, plaintiff has proved herself to be deserving of relief under Title VII, 42 U.S.C. § 2000e–16, as amended, for discrimination against her because of her sex. The broad remedial powers invested in this court by Congress to curb such discriminatory practices provide for the award of both affirmative relief and monetary damages, 29 U.S.C. § 626(b) and 42 U.S.C. § 2000e–5(g). By virtue of this authority, therefore, the court is of the opinion that, first, plaintiff is due to be awarded the position for which she applied and was discriminatorily passed over, the court having been informed that this job now stands vacant. In the event that this position has been subsequently filled, plaintiff shall be "red-circled," and given the next comparable position to be filled. Second, plaintiff is due to be awarded back pay with interest and full benefits of the job which she was denied, from the date of her nonselection, October 7, 1976, to such date as she is given this or another comparable job. Finally, upon proof to be filed within fifteen days of the entry of this opinion, plaintiff shall be awarded attorney's fees.

## MEMORANDUM OPINION

This cause came before the court at its regularly scheduled motion docket on the motion filed by the defendant for a stay of the prior orders of this court dated September 27, 1978, October 18, 1978, and December 20, 1978. Those orders entered judgment, fashioned relief, and determined an award of attorney's fees in favor of the plaintiff after trial on the merits. The defendant has filed notice of appeal from those orders and now asks that they be stayed pending the outcome of his appeal. Having considered the motion and the arguments of counsel thereon, the court concludes that under the law of this circuit a stay should not be granted.

██ Four elements were established by the Fifth Circuit as considerations for the district court in determining the utility of a stay pending appeal from injunctive relief. The trial court is to consider:

[1] whether movants have made a strong showing that they are likely to succeed on the merits of the appeal. . . .

[2] whether movants have shown that unless a stay is granted *they* will suffer *irreparable* injury. . . .

[3] whether a stay would substantially harm other parties to the litigation, . . . [and]

[4] "Where lies the public interest?"

*Belcher v. Birmingham Trust National Bank*, 395 F.2d 685, 686 (5th Cir. 1968).

The defendant has failed to convince this court of the likelihood of his success on appeal. Counsel ably argued a question of law concerning the prima facie showing required of the plaintiff in an employment discrimination suit. But the court's Memorandum Opinion, entered September 28, 1978, went further than merely holding for the plaintiff on the basis of her prima facie showing of discrimination. Instead, the court ruled for the plaintiff, and she ultimately prevailed on the merits, based on the totality of proof in her favor.

This court cannot but think the appellate court will recognize—from its own review of the record and this court's Memorandum Opinion—that the true intent of this court was to find as a fact that the plaintiff proved by a preponderance of the evidence that she had been discriminated against both by reason of age and of sex, alternatively. The decision was not based, although there is language to that effect, on shifting burdens of proof. Were the case before this court again on the same evidence, this court would so hold, very plainly. This court is content that the appellate court will say that this is true and consequently the appellant is unlikely to prevail. Thus the court cannot find "that there is great likelihood, approaching near certainty," *Greene v. Fair*, 314 F.2d 200 (5th Cir. 1963), that defendant will prevail on his appeal. This court is also confident that a reading of the record will show no manifest

error, since it arrived at its decision on the facts and not by reason of misapplication of a rule of law.

Defendant also has fallen short of proving an irreparable injury he will suffer unless the requested stay is granted, the second factor under *Belcher*. The harm to the defendant in appointing the plaintiff to the position in question or in giving her the back pay and benefits seems slight in comparison to the plaintiff's continued deprivation thereof. For the additional reason that there has been shown no irreparable injury to the defendant, indeed on balance not as great an injury as to the plaintiff were the stay to be granted, the court therefore is compelled to deny the motion.

Finally, the public interest, the fourth factor under *Belcher*, has been considered by the court. In view of the remedial interest regarding employment discrimination expressed by the very enactment of the statutes upon which this action was based, no stay should be granted. It does not appear to this court to have been the intent of Congress to pass such legislation only to be subverted by the same judicial process by which it was intended to be enforced. Undeniably, the public interest would be found on the side of effectuating, and not delaying, the remedies called for in the prior judgment of this court.