**Joan A. HAGANS, Plaintiff-Appellant,**

**v.**

**Cecil ANDRUS, Secretary of the Department of the Interior, Defendant-Appellee.**

**No. 79–4424.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1980.

Decided Feb. 5, 1981.

Rehearing and Rehearing En Banc Denied April 9, 1981.

for which she alleges to have been more qualified. At the conclusion of Hagans' case, the district court granted the government's motion for an involuntary dismissal, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The court held that Hagans had failed to establish a prima facie case of discrimination. Hagans appeals from the judgment for the government and from the district judge's failure to grant her motion that he recuse himself. We affirm in part, and reverse and remand in part.

I

Hagans began her government service in 1955 when she had a GS–4 position with the Bureau of Land Management (BLM). In 1957, she received her first supervisory position. By 1970, she had moved up to a GS–12 position as a chief adjudicator, with a staff of 35 to 40 persons. In 1974, she became Chief of Operations of the Alaska Outer Continental Shelf (OCS) Office, a GS–13 position. Throughout her government service, Hagans received several awards for superior performance and special achievement.

Sanford M. Gibbs, Anchorage, Alaska, argued, for plaintiff-appellant; Linda M. O'Bannon, Sanford M. Gibbs, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, Alaska, on brief.

Susan A. Ehrlich, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee.

Edward Hoffmann, the manager of the Alaska OCS Office, selected Hagans for the OCS job. Hoffmann was the immediate supervisor of Hagans and Donald Henninger, the chief of the Environmental Assessment Division. Hagans and Henninger alternated as acting manager whenever Hoffmann was absent. Several conflicts arose between Hagans and Henninger. Some of the conflicts arose out of disputes over the proper division of responsibility between their two offices. Some of the conflicts, however, occurred because of Henninger's apparent hostility towards women in the work place and, more specifically, his hostility towards women in supervisory positions. Hoffmann recognized that Henninger's attitude was a problem. Hoffmann counseled Henninger about it, and at one point tried to have Henninger transferred. Hoffmann, however, never took any formal action to reprimand Henninger, and the conflict was

Before WALLACE, HUG and SCHROE-DER, Circuit Judges.

WALLACE, Circuit Judge:

Joan Hagans brought suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Her complaint alleged that the Secretary of the Interior, by his agents and employees (the government), unlawfully discriminated against her on the basis of sex by hiring a male for a position

never resolved. Although Hoffmann and Hagans enjoyed a good, close working relationship throughout this period, Hoffmann testified that he thought that having a woman supervisor would cause Henninger a great deal of stress.

In 1977, a new GS–14 level position of assistant manager was created for the OCS Office. Hagans applied for the position. A promotion panel in Washington, D. C. did an initial screening that apparently weeded out candidates that lacked the basic qualifications for the job. Hoffmann was then to select the top three candidates from the 11 candidates submitted to him, and the final choice would be made in Washington. Hoffmann made Robert Brock, a staff assistant to the Assistant Secretary of the Interior for the OCS program nationwide, his first choice; Hagans was his second choice. The Washington office selected Brock for the job. Hoffmann gave several reasons for making Brock his first choice. He emphasized that Brock's "Washington perspective" gave him an advantage over Hagans who, in Hoffmann's view, had a narrow, provincial outlook. Other reasons included Brock's ability to analyze environmental impact statements; the need for fresh outlooks and outside experience; Hoffmann's plans to retire and his desire to select an "heir apparent"; and the inter-divisional conflicts between Hagans and Henninger.

## II

We begin by analyzing the district court's conclusions of law. These are freely reviewable on appeal. *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978).

All Title VII "disparate treatment" [1] cases are divided into three parts. First, the plaintiff has the burden to establish a prima facie case of discrimination. Second, if the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's rejection. Third, if the defendant successfully carries that burden, the plaintiff has the opportunity to demonstrate that the reasons stated by the defendant were a mere pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*).

In granting the government's motion for dismissal, the court held that Hagans had failed to establish a prima facie case under *McDonnell Douglas*. Because we conclude that the court applied an improper legal standard, we reverse and remand for further proceedings. The district judge must then initially decide whether Hagans did establish a prima facie case under the correct legal standard.

The district court applied the four point test set forth in *McDonnell Douglas* that the plaintiff must meet to establish a prima facie disparate treatment case. By applying that test strictly, the district judge required Hagans to carry the burden of proving

(i) that [she] belongs to a [minority group]; (ii) that [she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* 411 U.S. at 802, 93 S.Ct. at 1824. The district court reasoned that because the position was filled by Brock, it did not remain open and thus Hagans had failed to satisfy the fourth prong of *McDonnell Douglas.*

---

**1.** Title VII discrimination can appear in at least two forms. In "disparate treatment" cases, an "employer simply treats people less favorably than others because of their race, color, religion, sex, or national origin." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977). "Disparate impact" cases "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* In the instant case, Hagans has alleged disparate treatment, not disparate impact.

The *McDonnell Douglas* test is not, however, so rigid. The Supreme Court observed, after stating the four point test, that the prima facie proof required would necessarily depend on the facts, and that the test stated would "not necessarily [apply] in every respect to differing factual situations." *Id.* at 802 n.13, 93 S.Ct. at 1824 n.13. The Court has reiterated the flexibility of the *McDonnell Douglas* test in subsequent decisions. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575–76, 98 S.Ct. 2943, 2948–2949, 57 L.Ed.2d 957 (1978); *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). *See also White v. City of San Diego*, 605 F.2d 455, 458 (9th Cir. 1979).

The district court improperly failed to adapt the *McDonnell Douglas* test to the facts of this case. In *McDonnell Douglas*, it was significant that the position sought by the plaintiff remained open after his rejection, and that the employer continued to seek applicants with the plaintiff's qualifications. In the instant case, several qualified people applied for one job that would necessarily be filled by one of them at a predetermined time. Hagans' rejection necessarily occurred simultaneously with Brock's hiring. Thus, the position could not possibly "remain open." To apply rigidly the *McDonnell Douglas* test to this situation would deny any plaintiff the opportunity to establish a prima facie case, no matter how blatant the discrimination.

It appears that Hagans satisfied the first three prongs of *McDonnell Douglas.* She was a member of a "minority," [2] was qualified for the job,[3] and was rejected for the position. The question before us is what more a plaintiff must show in a case such as this to establish a prima facie case.

In *White v. City of San Diego, supra,* we recognized the need for a flexible approach to the *McDonnell Douglas* standard. We stated that "a proper prima facie case identifies sex as the likely reason for the denial of a job opportunity." 605 F.2d at 458. This statement in *White* accurately identifies the import of *McDonnell Douglas* and its progeny. The Supreme Court itself, noting that the test stated in *McDonnell Douglas* does not apply to every case, has interpreted *McDonnell Douglas* to require a Title VII plaintiff to offer sufficient evidence "to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *International Bhd. of Teamsters v. United States, supra,* 431 U.S. at 358, 97 S.Ct. at 1866. The Court has also stated that "[p]roof of discriminatory motive is critical . . . ." *Id.* at 335 n.15, 97 S.Ct. at 1854, n.15. *See also Furnco Constr. Corp. v. Waters, supra,* 438 U.S. at 575–77, 98 S.Ct. at 2948–2950; *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 761–62 (9th Cir. 1980).

We do not think it necessary to adopt a new, specific fourth prong of the *McDonnell Douglas* test to fit this case. We recognize that the Court of Claims has adopted a modified *McDonnell Douglas* test for use in failure to promote cases. *Pettit v. United States,* 488 F.2d 1026, 1033, 203 Ct.Cl. 207 (1973).[4] We have seen in the case before us

---

**2.** *McDonnell Douglas* involved only racial minorities. We have, however, applied *McDonnell Douglas* to sex discrimination cases. *See White v. City of San Diego,* 605 F.2d 455 (9th Cir. 1979).

**3.** The government concedes that Hagans was qualified for the job. This is all that is necessary to satisfy the qualification prong of *McDonnell Douglas.* It is not necessary for Hagans to show that she was *more* qualified than Brock. If, however, a plaintiff could show that she was *more* qualified than the person hired, this would be relevant evidence in an appropriate case in establishing the fourth prong of *McDonnell Douglas.*

**4.** The Court of Claims held that
a prima facie case of failure to promote because of racial discrimination is made by showing: (i) that plaintiff belongs to a racial minority, (ii) that he was qualified for promotion and might have reasonably expected selection for promotion under the defendant's on-going competitive promotion system, (iii) that he was not promoted, and (iv) the supervisory level employees having responsibility to exercise judgment under the promotion system betrayed in other matters a predisposition towards discrimination against members of the involved minority.
*Pettit v. United States,* 488 F.2d 1026, 1033, 203 Ct.Cl. 207 (1973).

that defining a test narrowly to adapt to one set of facts creates the risk that other courts will attempt to fit a different set of facts into a test that may be inappropriate. Therefore, we think it unwise to adopt the *Pettit* test as the only possible test in promotion cases; we do not, however, hold that the *Pettit* factors cannot be considered. We do reject the test stated in *Jones v. Cleland*, 466 F.Supp. 34, 36–37 (N.D.Ala. 1978), which Hagans would have us adopt. In *Jones*, a sex discrimination in employment case, the court's fourth *McDonnell Douglas* prong was simply that a male was hired instead of a female. *Id.* Something more should be required to establish a prima facie case. *See International Bhd. of Teamsters v. United States, supra,* 431 U.S. at 358 n.44, 97 S.Ct. at 1866 n.44.

On remand, then, the district judge must review the evidence as it stands or, in his discretion, he may receive additional evidence. He then must determine whether the evidence is sufficient to create an inference that sex was "the likely reason for the denial of [the] job opportunity." *White v. City of San Diego, supra,* 605 F.2d at 458. If the evidence is sufficient to create such an inference, the district judge must then permit the government to go forward with its case. If the evidence is not sufficient to create such an inference, the district judge must dismiss the case.

■ In addition to its *McDonnell Douglas* holding, the district court held that there was no evidence to link Hagans' rejection "in a way that plainly suggests sexual discrimination," *citing Miller v. Williams,* 590 F.2d 317 (9th Cir. 1979). In *Miller,* the plaintiff claimed that she was fired from her job because of her activities in promoting the legitimate interests of women. *Id.* at 318. She argued that in a firing case, the court should apply only parts (i) and (iv) of *McDonnell Douglas.* We stated that parts (ii) and (iii) linked part (i) to part (iv) "in a way that plainly suggests discrimination." *Id.* at 320. Because plaintiff offered no alternative link, she failed to establish a prima facie case. *Id.* The "plainly suggests" language in *Miller* was merely de-

scriptive of how the *McDonnell Douglas* elements interrelate; it did not describe the burden of proof on the plaintiff, as the district court's holding implies. The district court's statement that the evidence must "plainly suggest" sexual discrimination states too stringent a test for a prima facie case and thus was error. As we have said, the proper test is whether the evidence is sufficient to create an inference that sex was the likely reason for the denial of the job opportunity.

### III

On remand, the district judge will apply the test we have stated to the facts of this case. Because Hagans has raised substantial questions concerning the district judge's findings of fact, we conclude that it is appropriate for us to examine those disputed findings. Hagans attacks generally the district court's adoption of the findings of fact submitted by the government, and challenges specifically several of the findings.

■ Although we have been critical of the wholesale adoption by a district court of the prevailing party's submitted findings (except in highly technical or scientific cases), this practice does not by itself constitute reversible error. *Photo Electronics Corp. v. England,* 581 F.2d 772, 776–77 & n.4 (9th Cir. 1978). We must, however, engage in a more careful analysis of adopted findings than we would have had they been authored by the district judge. Nonetheless, the standard of review for all findings of fact is the clearly erroneous standard. *Id.* at 777; Fed.R.Civ.P. 52(a).

Hagans first challenges the finding that "[t]he entire selection process . . . was carried out in a superior manner with absolutely no hint of discrimination based upon sex." This finding is clearly erroneous. There was some evidence that might tend to support Hagans' theory of sex discrimination. For example, Hoffmann's testimony regarding his failure to reprimand Henninger formally for Henninger's negative attitude toward women in the work place, and Hoffmann's belief that Henninger would feel uncomfortable working with a

woman supervisor tend to show that sex might have been an impermissible factor in the decision. We express no opinion at this stage as to whether the evidence is sufficient to establish a prima facie case. We do conclude, however, that it is clearly erroneous to find "absolutely no hint" of sexual discrimination.

Hagans next challenges the court's findings concerning the possible alteration of notes by Hoffmann. At his deposition, Hoffmann produced some notes, which he claimed were the original notes concerning his reasons for recommending Brock for the position. The notes were dated "12/12/77." Hoffmann testified that the notes had not been altered. During the trial, Hagans produced a copy of undated notes that were similar to the notes that Hoffmann had described but different in certain respects.[5] Hagans testified that she had taken notes without permission from Hoffmann's desk in April or May of 1978, made copies, and returned them. Hoffmann was not confronted with the copy of the second set of notes at his deposition, though Hagans had made the copy some months before, and he did not testify at trial. The district court found that "not one scintilla of evidence has been introduced to contradict" Hoffmann's statement in his deposition that he never altered the notes. Again, to say no evidence exists overstates the point. A reasonable person might infer from the two sets of notes that the dated copy had been altered. If so, this would bear on Hoffmann's credibility and on his true motives

for recommending Brock.[6] Of course, the evaluation and weighing of evidence is within the discretion of the district judge. On remand, he should consider the two sets of notes and Hoffmann's testimony along with all the other relevant evidence in making his determinations. We hold only that to the extent this finding may be considered significant to the ultimate resolution of this case, it was clear error for the district court to find that there was "not one scintilla of evidence" that the notes had been altered.

Finally, Hagans challenges the court's finding and conclusion with regard to statistical evidence. Hagans offered evidence that as of October 31, 1975, only 2.8% of all GS–14 level employees in the Department of Interior were women. The district court disregarded these statistics because the OCS program had one of its four GS–14 positions (25%) filled by a woman.

■ The district court should have disregarded both statistics. The OCS 25% figure cannot be considered because the size of the sample (four) is much too small to be meaningful. *See Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974). The 2.8% Department of Interior figure is meaningless without evidence that there existed somewhere a pool of women applicants qualified to assume those GS–14 positions. *Pack v. Energy Research & Dev. Admin.*, 566 F.2d 1111, 1113 (9th Cir. 1977).

5. The notes that Hoffmann produced, dated 12/12/77, read as follows:

    1. Ability to coordinate staff and division functions effectively and with high degree of skill

    2. Ability to represent the programs of the office, Bureau and Department in many situations.

    3. A need for broad-nationwide appreciation of the marine minerals program

    4. An infusion of new experience and background into the management structure

    5. A dedication to the program

    6. A need for a strong and forceful alter-ego

The notes that Hagans produced during trial were undated, did not contain the phrase "into

the management structure" in paragraph 4, and contained a paragraph 7, which read, "I also look at the distinct possibility of my retirement within the next couple of years and the need for effective continuity in the program."

6. Hagans offered evidence of a conversation between Hoffmann and Richard E. Redmond, the Chief of the Office of Equal Employment Opportunity at BLM. In that conversation, according to Redmond, Hoffmann said that he was looking for an "heir apparent." Redmond claims to have told Hoffmann that he thought the reference to an "heir apparent" meant that Hoffmann was looking for a replacement who was very much like himself, that is, a white male.

## IV

 Hagans also appeals from the district judge's order denying her motion that he recuse himself. Hagans made the motion for disqualification, pursuant to 28 U.S.C. § 455, after the judge granted the government's motion for a Rule 41(b) involuntary dismissal, but before judgment was entered.

A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[7] Hagans questions the judge's impartiality on a number of grounds. First, she points to a comment that the judge made during the course of the trial. In discussing with counsel whether Hagans had encountered any sexual discrimination before she applied for the assistant manager's job, the judge said, "she went a long ways as a woman before that." This comment is insufficient to require recusal. The discussion of whether Hagans claimed any sexual discrimination prior to her application for the new job was relevant to the case. In that context[8] the comment did not create a reasonable ground for questioning the judge's impartiality. *See United States v. Sibla*, 624 F.2d 864 (9th Cir. 1980).

Hagans also claims that the judge's bias is the only explanation for his granting the government's Rule 41(b) motion, and for his refusal to accord "any weight" to her evidence. This claim is without merit. It is not a ground for disqualification that the judge has ruled against the moving party or that he may have committed an error of law. *United States v. Conforte*, 624 F.2d 869 (9th Cir. 1980).

Finally, Hagans claims that the district judge was seeking a position on this court and was therefore influenced by "judicial politics." This claim is frivolous.

We therefore affirm the denial of the motion for recusal.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

---

**7.** Section 455(b) lists five specific, additional grounds for disqualification. None of Hagans' allegations fits within any of the section 455(b) grounds.

**8.** The exchange between counsel and the court was as follows:

THE COURT: Counsel, if there is anything in your evidence, it has shown this plaintiff didn't encounter any problems at all until she applied for the one job for which she was not appointed. Your allegation is that she was not appointed to the job only because she was a woman.

MR. HAGANS [counsel for the plaintiff]: That is right, and our allegation is this—

THE COURT: She went a long ways as a woman before that.

MR. HAGANS: In 23 years, I wouldn't call that very far.

THE COURT: Well, I suppose that can be argued one way or the other.