**Robin POTERA–HASKINS, Plaintiff,**

v.

**Geoffrey GAMBLE, Allen Yarnell, Peter Fields, Dan Davies, and Montana State University–Bozeman, Defendants.**

**No. CV 05–22–BU–SEH.**

United States District Court,
D. Montana,
Butte Division.

Sept. 28, 2007.

David K. Colapinto, Kohn Kohn & Colapinto, Washington, DC, Elizabeth A. O'Halloran, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, for Plaintiff.

W. Anderson Forsythe, Moulton Bellingham Longo & Mather, Billings, MT, for Defendants.

## MEMORANDUM AND ORDER

SAM E. HADDON, District Judge.

### INTRODUCTION

Plaintiff Robin Potera–Haskins (Plaintiff) brought this action alleging violation of First Amendment free speech rights, 42 U.S.C. § 1983 (Count I), sexual discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (Count II), and unlawful employment practices in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (Count V).[1] Montana State University–Bozeman (MSU) is named as defendant in all counts. Count I only is asserted against Geoffrey Gamble (Gamble), Allen Yarnell (Yarnell), Peter Fields (Fields), and Dan Davies (Davies).[2]

All defendants have moved for summary judgment. The motion is opposed.

### STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine issues of material fact and, if viewing the evidence in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Cleary v. News Corp., 30 F.3d 1255, 1259 (9th Cir.1994). Once a summary judgment motion is made and supported, the non-moving party may not rest on the pleadings, but must set forth specific facts showing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 n. 3, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### FACTS

The following facts material to resolution of the motions before the Court are undisputed on the record: [3]

---

1. Counts III and IV were dismissed by Order of May 18, 2006.

2. At the July 27, 2007, hearing on Defendants' summary judgment motion, counsel for Plaintiff acknowledged that Counts II and V were directed solely against MSU, not individual Defendants in their official or unofficial capacities.

3. The record before the Court contains both disputed questions of fact, as well as statements of undisputed, but immaterial, facts. Neither category raises material fact issues

Defendant MSU is a public university charged with offering public education and research. It is governed by the Montana Board of Regents.

Gamble is the MSU President. Yarnell is Vice President of Student Affairs. Fields is the Athletic Director. He is the administrator responsible for university athletic programs. Davies is an Associate Athletic Director.

Plaintiff was hired as head women's basketball coach on April 13, 2001. She was terminated on April 7, 2004. She was, in that role, a public employee.

In the spring of 2003, on- and off-campus concerns regarding the women's basketball program developed. A university committee was appointed to review the situation. A report was rendered upon completion of that review. Issues within the program that needed to be addressed were identified. Meetings were held with Plaintiff to address the issues.[4] Follow-up directives issued by Fields in November 2003 instructed Plaintiff not to retaliate against the players, to limit practice time, and to permit players to talk to assistant coaches.

Plaintiff responded to the November 2003 directives with a series of memoranda which are acknowledged by Plaintiff to contain the substance of her claims of violation of rights as asserted in this case.[5] Each memorandum is from "Robin Potera–Haskins, Head Coach, Women's Basketball, Montana State University." Five are addressed to "Dr. Allen Yarnell, Vice President Student Affairs, Montana State University" and one is addressed to "Dan Davies Senior Associate A.D. Internal Operations." The subject lines on the documents addressed to Yarnell are "INEXPERIENCE & UNPROFESSIONALISM OF SUPPORT STAFF REPORTING TO MR. FIELDS;" "BRIANA FIELD'S PLAYING TIME AND PREFERENTIAL TREATMENT;" "BRIANA FIELDS—BASKETBALL TEAM MEMBER;" "UNACCEPTABLE BEHAVIOR OF ATHLETIC DIRECTOR PETER FIELDS;" and "RECOMMENDATIONS FOR PETER FIELD'S QUANDARY." The memorandum addressed to Davies had the subject line of "RESPONSE TO BOB OAKBERG'S LETTER." All of the memoranda are directly related to Plaintiff's performance as head women's basketball coach. A memorandum sent to Plaintiff from Yarnell later in November 2003 was concerned with the same issues.

Follow-up interviews with players were conducted and an additional report regarding dissatisfaction with and concerns about Plaintiff's performance as head women's basketball coach was submitted to Gamble in the spring of 2004. On or about April 7, 2004, Gamble met with Plaintiff and requested that she either resign or that she would be terminated. She did not resign and was terminated.

Gamble alone made the termination decision. Yarnell concurred. Neither Fields nor Davies participated in the decision. Plaintiff was paid all salary and benefits due to her by contract for some 14 months, together with certain other compensations.

---

which precludes summary judgment of the claims dismissed.

**4.** Issues addressed included focus on student welfare, length of practice, concerns as to student fatigue and injury potential, and stationing an assistant coach in the dressing room to prevent "gossip."

**5.** The topics asserted to constitute "free speech," whether verbal or written, were specifically acknowledged by Plaintiff to be enclosed within the several memoranda.

Assistant women's basketball coach Greg Kudrna (Kudrna) was appointed interim head coach pending conduct of a national search and hiring of a permanent replacement. A female permanent replacement coach, Tricia Binford, was hired on April 13, 2005.

Plaintiff obtained other employment in June or July 2005.

## CLAIMS

In Count I, Plaintiff asserts that her treatment and termination were sexually discriminatory and in retaliation for her complaints to various MSU administration members, statements she characterizes as "protected speech," in violation of the First Amendment and 42 U.S.C. § 1983. She also claims that Defendants retaliated against her by providing derogatory information about her to prospective employers.

In Count II, Plaintiff alleges that Fields' actions associated with his daughter and interference with the team, Plaintiff's termination, and MSU's interference with Plaintiff's future employment were sexually discriminatory in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

Count V claims that the actions described in Counts I and II were unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1).

## DISCUSSION

### First Amendment and 42 U.S.C. § 1983

Plaintiff's First Amendment claim requires establishment of three ele-

ments: "(1) [that she] engaged in constitutionally protected speech, (2)[her] employer took adverse employment action against [her], and (3)[her] speech was a 'substantial or motivating' factor in the adverse action." *Freitag v. Ayers,* 468 F.3d 528, 543 (9th Cir.2006) (quoting *Coszalter v. City of Salem,* 320 F.3d 968, 973 (9th Cir.2003)). Element (2) of the *Freitag* test is met. The nature and circumstances of the alleged violation must be examined to assess whether elements (1) and (3) of the *Freitag* test are present. This examination, in turn, invokes the Court's obligation to address and resolve the threshold issue of Defendants' claim of qualified immunity.[6]

### Qualified Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier,* 533 U.S. at 200, 121 S.Ct. 2151 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "'Government officials performing discretionary functions ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schwartzman v. Valenzuela,* 846 F.2d 1209, 1211 (9th Cir.1988) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

The initial question to be addressed in this inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [employer's] conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If no such violation is

---

**6.** "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

evident or could be found by a reasonable juror, the inquiry ends and the employer is immune from liability. If such a violation is evident, the court is next to consider "whether the right was clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. This second tier of analysis is meant to consider the unique context of the particular case and law, that is "[W]hether it would be clear to a reasonable [employer] that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)) ("[A]s we explained in *Anderson,* the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established"). Finally, "[i]f the law did not put the [employer] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151 (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

■ A government employee seeking to establish that her First Amendment rights were violated must show: (1) that her speech was made as a citizen and "involved a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006); *Settlegoode v. Portland Public Schools,* 371 F.3d 503, 513 (9th Cir.2004) (citations omitted); "and (2) that the interests served by allowing [her] to express [her] self outweighed the state's interest in promoting workplace efficiency and avoiding workplace disruption." *Settlegoode,* 371 F.3d at 513 (citations omitted). Both elements must be present.

■ Whether a public employee's speech is entitled to constitutional free speech protection is to be evaluated by the considerations of *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and followed in *Garcetti.* First, was the employee speaking "as a citizen on a matter of public concern"? *Garcetti,* 126 S.Ct. at 1958 (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731). If not, no constitutional protection is afforded to that speech. *See Garcetti,* 126 S.Ct. at 1958 (citing *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). If the employee *was* speaking in that capacity, "[f]he question [then] becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti,* 126 S.Ct. at 1958 (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731).

Although a citizen accepts certain limitations by entering government service, the employer is prohibited from "leverag[ing] the employment relationship to restrict ... the liberties employees enjoy in their capacities as private citizens." *Garcetti,* 126 S.Ct. at 1958 (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). The Supreme Court has been careful, however, not to "empower [public employees] to 'constitutionalize the employee grievance.'" *Garcetti,* 126 S.Ct. at 1959 (quoting *Connick v. Myers,* 461 U.S. at 154, 103 S.Ct. 1684).

■ "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 126 S.Ct. at 1960. Therefore, if the speech only occurs because of the employee's professional responsibilities, it may be restricted without infringing upon

any constitutionally protected liberties. *See Garcetti*, 126 S.Ct. at 1960. However, neither the fact that speech is made in the workplace, nor that its subject matter relates to the speaker's employment is dispositive of the question of constitutional protection. *See Garcetti*, 126 S.Ct. at 1959.

■ The record before the Court, when reviewed in the light most favorable to the Plaintiff, permits but one conclusion—that her statements which gave rise to this case were made by her in her official capacity as a public official—namely, head women's basketball coach. They were not made as a private citizen involving a matter of public concern. In each of the several memoranda, Plaintiff designates and identifies herself as "Head Coach, Women's Basketball, Montana State University." Each memoranda is addressed to a particular university official having direct involvement with and participation in MSU's athletic programs. More specifically, the subject matter of each and all of the memoranda centers either around Plaintiff's accusations of allegedly improper interference by Fields with Plaintiff's responsibilities as head coach of the women's basketball program, particularly as it related to his daughter's unwarranted and unwelcome position on the team, or to her responses to the alleged violations of NCAA rules made by others.

Certainly, the memoranda rigorously address issues with which Plaintiff appears to have been deeply involved and about which she had substantial concern. That involvement and concern nevertheless was personal to the Plaintiff and, except for the most limited of statements, directly related to her grievances and her perceptions of her role and performance as head women's basketball coach, her defense of that role and performance, and the unwarranted interference of others with her performance of the job. In short, the issues raised were directly tied to her public official role and her duties as a public official.

Even if after-the-fact analysis might be said to support the argument that an expression of an issue of public concern could be found within the text of a memorandum, the record as a whole is clear that free speech undertaken by Plaintiff came about because of Plaintiff's own perceptions of her professional responsibility as head women's basketball coach. The record simply does not support the Plaintiff engaged in constitutionally protected free speech in raising or pursuing the matters in issue. All Defendants are entitled to summary judgment on Count I on qualified immunity grounds [7].

### *Title IX*

■ MSU bases its motion for summary judgment on Count 11 upon two primary arguments: (1) Plaintiff did not properly notify Defendants of the alleged discrimination; and (2) Plaintiff cannot show that she was fired specifically *because* she complained about sex discrimination. Both arguments fail as bases for summary judgment.

20 U.S.C. § 1681(a) provides "[n]o person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." The Supreme Court interprets and applies the statute broadly. It

---

**7.** Even if Defendants were not entitled to qualified immunity, the Court has grave reservations as to whether any or all of the statements at issue, as presented by Plaintiff to MSU officials, could be said to have been expressions of a right clearly established to which any adverse action taken in response would have been unlawful. It is not necessary, however, to reach a conclusion on that question.

is not required that a victim of retaliation for complaining about discrimination be the *subject* of the original complaint; that is, a reliable claim can arise if one complains about the discriminatory treatment of others, and is retaliated against as a result. *See Jackson v. Birmingham Board of Education*, 544 U.S. 167, 179, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).

■ The issue before the Court is not whether Plaintiff will ultimately prevail, but whether she should be able to present any available evidence to the finder of fact. *Jackson*, 544 U.S. at 184, 125 S.Ct. 1497. The Plaintiff does not need to "clearly and unequivocally complain[ ] to her supervisors about the unequal treatment of the women's basketball team" as the Defendants assert. (Defs.' Br. in Supp. of Mot. for Summ. J. at 15–16 (Mar. 9, 2007).) Plaintiff must only show that Defendants "retaliated against [her] *because* [s]he complained of sex discrimination." *Jackson*, 544 U.S. at 184, 125 S.Ct. 1497. Defendants assert that Plaintiff was terminated exclusively because of poor performance as a coach, and that "the record unequivocally demonstrates her termination was based exclusively on the mistreatment and abuse suffered by the student athletes under her leadership." (Defs.' Br. in Supp. of Mot. for Summ. J. at 17–18 (Mar. 9, 2007).) Plaintiff may well have a significant challenge in establishing this claim. However, the actual reason for Plaintiff's termination remains an issue of material fact yet to be resolved.

### *Title VII*

■ Three elements must be satisfied to establish a *prima facie* case of discrimi-

nation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1):[8] (1) the Plaintiff belongs to a class protected by Title VII; (2) she was qualified for her job; and (3) a male with similar qualifications replaced her. *See Jones v. Los Angeles Community College Dist.*, 702 F.2d 203, 205 (9th Cir.1983) (citing *Lynn v. Regents of the University of California*, 656 F.2d 1337, 1340–41 (9th Cir.1981) *cert. denied*, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982)). Defendants' motion for summary judgment on this count focuses on element (3).

■ The district court must also "determine whether the evidence is sufficient to create an inference that sex was 'the likely reason for the denial of [the] job opportunity.' " *Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir.1981) (quoting *White v. City of San Diego*, 605 F.2d 455, 458 (9th Cir.1979)).

■ Plaintiff asserts that the fact that the interim (temporary) coach named when Plaintiff was terminated was a male is sufficient to avoid summary judgment for MSU. That assertion, however, is too broad and fails to address or satisfy the *Hagans* test. The day Plaintiff was terminated, MSU announced that Plaintiff's former assistant, Kudrna, would serve as interim coach for the 2004–2005 basketball season. The hiring of an interim coach is a common practice when an athletic department is faced with an untimely coaching vacancy that, due to shortened time periods related to recruiting and other deadlines, prevents a university from con-

---

8. It shall be an unlawful employment practice for an employer—

　　(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e–2(a)(1).

ducting a full-scale search for a permanent replacement.

Kudrna was invited to apply for the permanent position. He was not accepted. Rather, MSU hired a female, Tricia Binford, as the permanent coach in April 2005. Kudrna was not a replacement for Plaintiff. He merely served as interim head coach until a permanent replacement was hired. The national search for the best qualified person to fill the permanent replacement role was both reasonable and necessary. It resulted in a female replacement. Under such circumstances, the elements of a Title VII claim are not present and the *Hagans* test requirements have not and cannot be met.

ORDERED:

1. Defendants' Motion for Summary Judgment [9] is GRANTED in part and DENIED in part as follows:

a. Count I is DISMISSED as to all Defendants.

b. Summary judgment as to Count II is DENIED.

c. Count V is DISMISSED as to all Defendants.

2. The parties are directed to amend the caption to reflect the dismissal of the individual Defendants.

9. Document No. 50.