AMENDED OPINION

**CHANDLER SUPPLY COMPANY, Plaintiff-Appellant,**

v.

**GAF CORPORATION, Defendant-Appellee.**

No. 77–3899.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 2, 1980.

Decided Aug. 8, 1980.

As Amended Oct. 15, 1980.

---

Robert S. Campbell, Jr., Salt Lake City, Utah, argued, W. Anthony Park, Park & Meuleman, Boise, Idaho, on brief, for plaintiff-appellant.

John R. Reese, San Francisco, Cal., for defendant-appellee.

Before SNEED and NELSON, Circuit Judges, and GRAY,* District Judge.

NELSON, Circuit Judge:

Plaintiff-appellant Chandler Supply Company (Chandler) challenges a judgment for defendant-appellee GAF corporation (GAF) in an action for (1) alleged breach of a distributorship contract under which Chandler was sole distributor in southern Idaho of resilient floor covering manufactured by GAF; (2) liquidated damages under an alleged agreement concerning repurchase of inventory; and (3) violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). Chandler complains that the district court abused its discretion in denying Chandler's untimely motion for jury trial; that the court erred in several findings of fact; and that the court prejudiced Chandler's case by erroneous evidentiary rulings. For the reasons given below, we affirm the district court's judgment.

## FACTUAL BACKGROUND

Sometime in the autumn of 1972, GAF's regional sales manager, John Burger, informed E.H. Hunter of Chandler that GAF was interested in enlisting Chandler as sole distributor in southern Idaho for GAF's floor covering products. An informal dinner sales meeting of several GAF employees and Chandler officers and employees took place in Boise on January 4, 1973. While some discussion was had of the details of establishing a distributorship, several problems which surfaced at the meeting

* The Honorable William P. Gray, United States District Judge, Central District of California, sitting by designation.

were not resolved. Among the matters left for later resolution were Chandler's lack of adequate warehouse space, determination of what Chandler's initial inventory level should be, extension of credit to Chandler by GAF, and negotiation of terms and conditions of sales. At a follow-up meeting held the next day, Jerry Bower, Chandler's vice president of sales, agreed to forward to GAF Chandler's financial statement for the most current year, in order to facilitate GAF's evaluation of Chandler's credit.

Following the January 4 meeting, Earl Chandler, president of Chandler, requested information on GAF's inventory repurchase provisions. On January 23, Burger sent Bower a letter which included information on GAF's provisions for repurchase of inventory. Bower was told that GAF's policy on promotions "will be described in more detail *after* you have become a GAF distributor." (emphasis added). In March, GAF's credit department approved an extension of credit to Chandler. Arrangements were then made to supply Chandler with an inventory of GAF products. GAF shipped some items directly to Chandler and Chandler purchased others from its predecessors.

On May 7, Burger sent Bower "your copy of the agreement establishing Chandler as the GAF distributor in Idaho." The agreement consisted of a two page letter and several attachments. The letter stated that either party could terminate the agreement upon thirty days written notice, and requested, without specifically making this a condition precedent to formation of the contract, that Chandler sign and promptly return a copy of the letter. On May 10, Jerry Bower, with authorization and with the intention of accepting GAF's offer, signed the document on behalf of Chandler but neglected to return it. GAF made no further demands in that regard.

For two years Chandler was the southern Idaho distributor for GAF products. Chandler's performance, however, was unsatisfactory to GAF. Chandler did not fully organize itself to promote GAF products, and failed to take advantage of financial concessions that GAF had offered to enable Chandler to provide its customer dealers with displays and samples of GAF goods.

GAF had also had problems with its Utah distributor. In late 1974, GAF began to look for a new Utah distributor. One prospect was Strevell-Paterson (Strevell), which had expressed an interest in the Utah distributorship. However, GAF was advised by Strevell that it would accept the Utah distributorship only if it could also have the southern Idaho territory.

GAF decided to take the Idaho distributorship from Chandler and establish Strevell in its stead. After notifying Strevell of this, Burger went to Boise and told Hunter officially that Chandler was terminated as the southern Idaho distributor. Hearing nothing further from Chandler, Burger contacted Bower, and again went to Boise, this time to meet with Bower to discuss the implementation of GAF's decision to terminate. At that meeting, Bower handed Burger a copy of the written contract and demanded the thirty days written notice of termination to which Chandler was entitled under the contract. On April 9, Burger sent Bower the requested notice, thus establishing May 9, 1975, as the effective day of termination.

Burger and Earl Chandler worked out the details of closing Chandler's distributorship in a series of letters and telephone conversations. It was agreed that GAF would repurchase Chandler's inventory of merchandise at its landed cost and that prompt payment would be made upon delivery of the inventory.

Chandler sold part of its inventory upon agreement that GAF would pay Chandler its normal profit on the sale. In addition, Chandler and GAF negotiated concerning the resale to GAF of displays and samples for which Chandler had paid the sum of $12,265.39. GAF offered to pay $1,000.00 for the unrealized portion of Chandler's investment in the displays and samples. Chandler demanded $12,265.39. The samples and displays were not redelivered to GAF, but were, pursuant to the understanding of the parties, left with various dealers.

Chandler subsequently brought suit against GAF for breach of the distributorship contract, liquidation of damages under the agreement concerning the repurchase of inventory, violation of section 1 of the Sherman Act, and common law fraud and conversion. Following a bench trial, the district court found that Chandler was entitled to damages against GAF, but that, after offsetting sums owed by Chandler to GAF, Chandler was indebted to GAF in the amount of $346.47. The court also awarded judgment in favor of GAF on the breach of contract, antitrust violations, and conversion and fraud claims.

Chandler attacks the district court's judgment on several grounds. It argues

(I) That the district court abused its discretion in denying Chandler's untimely motion for a jury trial;

(II) That the district court's finding that GAF's termination of Chandler was not in breach of the distributorship contract was clearly erroneous;

(III) That the district court's finding that GAF had not violated section 1 of the Sherman Act was clearly erroneous;

(IV) That the district court's determination of the amount GAF owed to Chandler for samples and displays was clearly erroneous; and

(V) That several of the court's evidentiary rulings constitute reversible error. Each contention will be addressed seriatim.

## DISCUSSION

I. Did the District Court Abuse Its Discretion in Denying Chandler's Untimely Motion for Jury Trial?

Rule 39(b) provides:

[N]otwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

Denial of a Rule 39(b) motion is to be sustained unless an abuse of discretion is shown. *Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 621 (9th Cir. 1979) (*citing Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 675 (9th Cir. 1975)); *Tomlin v. Pope & Talbot, Inc.*, 282 F.2d 447, 449 (9th Cir. 1960); *Johnson v. Gardner*, 179 F.2d 114, 118 (9th Cir. 1949), *cert. denied*, 339 U.S. 935, 70 S.Ct. 661, 94 L.Ed. 1353 (1950). For this reason, appellate courts normally refuse to interfere with a trial court's decision. *See, e. g.*, 5 Moore's Federal Practice ¶ 39.09, at 716 (2d ed.1979). Although the right to a jury trial is a constitutional one, the Federal Rules of Civil Procedure, which set out time limits for invoking this right, are authoritative. A court's exercise of discretion in denying a motion for a jury trial, based on these rules, does not impinge upon a party's constitutional rights. *See Pacific Queen Fisheries v. Symes*, 307 F.2d 700, 718–719 (9th Cir. 1962), *cert. denied*, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963). Moreover an "untimely requests for a jury trial must be denied unless some cause beyond mere inadvertence is shown." *Mardesich v. Marciel*, 538 F.2d 848, 849 (9th Cir. 1976) (per curiam); *Galella v. Onassis*, 487 F.2d 986, 989 (2d Cir. 1973).

Chandler did not demand a jury trial within the time specified in Rule 38(a), ten days from the filing of the last pleading concerned with the issues for which trial by jury is sought. The last pleading was GAF's answer, filed September 2, 1975. Chandler filed a demand for a jury and a motion for jury trial under Rule 39(b) on December 15, 1975, some three months late. The motion rested upon the following brief statement of extenuating circumstances:

Failure to file such demand was not intentional on the part of Plaintiff and at no time was it Plaintiff's purpose to waive its right to have the factual issues raised by its Complaint determined by a jury. The failure to file timely demand pursuant to Rule 38 was as a result of the inadvertence and neglect of Plaintiff's counsel.

In its brief to this court Chandler elaborates. The lawyer in charge of the case, Mr. Campbell, was swamped with other work when the original complaint was being prepared by "a young associate."

Campbell, nevertheless, signed the complaint, as did a partner in his firm and Chandler's local counsel in Idaho.

Chandler's excuse for its failure to demand a jury trial in a timely manner was one that this court has indicated is insufficient for a finding of abuse of discretion. *Mardesich v. Marciel,* 538 F.2d at 849. Moreover, the antitrust issues involved were technical and complicated. In these circumstances, the district court was within its discretion to deny the untimely motion for jury trial. *Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d at 621, *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d at 675.

II. Is the District Court's Finding That GAF's Termination of Chandler Was Not In Breach of the Distributorship Contract Clearly Erroneous?

█ The district court found that the contract was entered into in May, 1973, and that the contract consisted of the two page letter from GAF and its attachments. Under the written contract, either party had the right to terminate the contract upon thirty days notice if he was for any reason dissatisfied with the continuation of the contract. Chandler argues that an oral contract was formed at the January 4, 1973, dinner sales meeting. Chandler states that the practice in the distributorship industry was that such an oral contract was for a period of not less than five to seven years during which the contract could not be terminated except for a showing of cause. Finally, Chandler asserts that the May 1, 1973, letter from GAF was merely a written confirmation of the oral agreement and did not supersede the existing oral agreement. In order for Chandler to prevail on his claims, he must show that the district court's findings that the contract was formed in May, 1973, and was terminable at will were clearly erroneous. Fed.R.Civ.P. 52(a); *United States ex rel. De Blasio Constr., Inc. v. Mountain States Const. Co.,* 588 F.2d 259, 264 n. 5 (9th Cir. 1978).

█ All matters of law raised by the dispute over the contract's formation are questions of Idaho law. In this circumstance, this court regards its standard of review as one that restricts scrutiny of the district court's determination. We will defer to the court's interpretation of Idaho law unless it is "clearly wrong." *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir. 1980) (advance sheet). Under Idaho law, "[o]ral stipulations, agreements, and negotiations preliminary to a written contract are presumed merged therein." *Ringer v. Rice,* 97 Idaho 105, 108, 540 P.2d 290, 293 (1975). Under Idaho law then, the May 1 letter would be presumed to be an incorporation of all previous agreements. However, even if such a presumption were not available, we would still find that the May 1 letter merged all former negotiations. The May 1 letter stated, "[y]ou will find enclosed the following documents, *which documents, together with this letter, constitute our entire agreement.*" (emphasis supplied). In light of this language, the letter and enclosed documents must be considered an "integrated" contract and the final embodiment of the agreement of the parties. "Antecedent understandings and parol evidence are not admissible to alter" the terms of the contract. *Golden Gate Acceptance Corp. v. General Motors Corp.,* 597 F.2d 676, 680 (9th Cir. 1979). *See also* 3 A. Corbin, Corbin on Contracts, § 573 at 357 (1960). Therefore, even if an oral agreement had been formed on January 4, 1973, between GAF and Chandler, such an agreement would have been superseded by the May 1 written contract.[1] *See Tapper Chevrolet Co. v. Hansen,* 95 Idaho 436, 510 P.2d 1091, 1094 (1973).

█ The May 1 letter stated:
It is understood and agreed that the arrangement contemplated herein is subject to factors and circumstances, not all of which at present can be foreseen. Ac-

---

1. Because of this conclusion, we need not decide whether an oral agreement was formed on January 4. The May 1 written contract was the exclusive and final embodiment of the contract between GAF and Chandler with respect to the circumstances under which the distributorship could be terminated.

cordingly, *both you and we shall have the right to terminate this arrangement at any time upon thirty days prior written notice.*

(Emphasis supplied). Bower, on behalf of Chandler, signed the agreement with the intention of accepting GAF's offer as stated in the letter. Moreover, Bower relied upon the letter in demanding that Chandler be given thirty days written notice before GAF terminated the contract. Chandler may not now assert that the contract had no legal significance.

Chandler's argument that the May 1 letter did not supersede the putative earlier oral agreement is based entirely upon *Restatement (Second) of Contracts,* § 61 (Tentative Draft No. 1, 1964), which states that any offer accepted in a manner other than that prescribed by the offeror is a counteroffer. Here, however, there was merely a failure to return the letter which had been signed as required by the offeror. In such a case, we see no error in applying the parol evidence rule and permitting to stand an integrated writing that has been signed by the party against whom it is admitted.

Chandler has failed to show that the district court's findings that the contract was formed in May, 1973, and was terminable at will were clearly erroneous. The district court's findings on this issue therefore are affirmed.

### III. Is the District Court's Finding That GAF Had Not Violated Section 1 of the Sherman Act Clearly Erroneous?

██ The basis of Chandler's antitrust claims is that GAF conspired with Strevell to terminate Chandler's distributorship and to substitute Strevell in Chandler's place without cause. Chandler argues that the substitution had an anticompetitive effect upon the floor covering business in southern Idaho. The district court found that GAF's decision to terminate Chandler was made for legitimate business reasons.

"It has been consistently held in this circuit that it is not a violation of the Sherman Act for a manufacturer to conspire with others to simply switch distributors at one

of its exclusive franchises and to cease doing business with a former dealer." *Golden Gate Acceptance Corp. v. General Motors Corp.,* 597 F.2d at 678; *Marquis v. Chrysler Corp.,* 577 F.2d 624 (9th Cir. 1978); *Dreibus v. Wilson,* 529 F.2d 170, 172–74 (9th Cir. 1975); *Bushie v. Stenocord Corp.,* 460 F.2d 116, 120 (9th Cir. 1972); *Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery,* 454 F.2d 442, 452 (9th Cir. 1972); *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.,* 416 F.2d 71, 78 (9th Cir. 1969), *cert. denied,* 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). That the termination of dealings may affect the entity refused is immaterial when the refusal is "for business reasons which are sufficient to the manufacturer in the absence of any arrangement restraining trade." *Bushie v. Stenocord Corp.,* 460 F.2d at 119. Here, it appears that GAF's termination of Chandler was merely an attempt to improve its distribution system by eliminating a dealer considered ineffective and replacing him with a more efficient one. The decision to terminate on this basis was proper. *Marquis v. Chrysler Corp.,* 577 F.2d at 624. The district court's finding that the termination was not for an anticompetitive purpose, and therefore not in violation of section 1 of the Sherman Act, is not clearly erroneous.

### IV. Is the District Court's Determination of the Amount GAF owes Chandler for Samples and Displays Clearly Erroneous?

██ Chandler argues that the district court's finding that GAF owed only $1,000.00 for Chandler's samples and displays inventory is clearly erroneous because GAF agreed to pay the full unrealized portion of Chandler's investment. Chandler argues that the district court should have found that GAF was indebted to it in the amount of $12,265.39, the sum Chandler paid for the inventory. The district court arrived at the $1,000 figure by finding that Chandler's failure to redeliver the inventory to GAF constituted acceptance of the $1,000 offer. Moreover, Hunter admitted at trial that the samples and displays were worth

only two or three hundred dollars. The district court's finding that GAF owed $1,000 for the inventory was not clearly erroneous.

V.  Did Any of the District Court's Evidentiary Rulings Constitute Reversible Error?

Because we have concluded that there was sufficient evidence to show that the contract was formed in May and was terminable at will upon thirty days written notice, it is unnecessary to reach Chandler's claims that the district court erred in making certain evidentiary rulings bearing on GAF's right to terminate the contract.

The district court's judgment is

AFFIRMED.