**PUREX CORP., Plaintiff-Appellant,**

v.

**PROCTER & GAMBLE CO. and Clorox Co., Defendants-Appellees.**

No. 80–5304.

United States Court of Appeals, Ninth Circuit.

Submitted April 8, 1981.

Decided Dec. 7, 1981.

Julian O. von Kalinowski, Gibson, Dunn & Crutcher, Los Angeles, Cal., for plaintiff-appellant.

Daniel A. Gribbon, Washington, D.C., argued for defendants-appellees; Robert K. Wrede, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., Edward W. Merkel, Jr., Dinsomre, Shohl, Coates & Deupree, Cincinnati, Ohio, on brief.

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The facts underlying Purex's antitrust claims are set forth in *Purex Corp. v. Procter & Gamble Corp.*, 419 F.Supp. 931 (C.D.Cal.1976); *Purex Corp. v. Procter & Gamble Co.*, 596 F.2d 881 (9th Cir. 1979) (*Purex I*). *See also Procter & Gamble*, 63 F.T.C. 1465 (1963); *Procter & Gamble Corp. v. FTC*, 358 F.2d 74 (6th Cir. 1966); *FTC v. Procter & Gamble Corp.*, 386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303 (1967).

Before CHOY and FLETCHER, Circuit Judges, and SOLOMON,* District Judge.

FLETCHER, Circuit Judge:

Purex appeals from the judgment entered by the district court in favor of Procter & Gamble and Clorox (hereinafter appellees). We note jurisdiction under 28 U.S.C. § 1291 (1976). We affirm for the reasons set forth below.

I

INTRODUCTION [1]

Purex commenced this action in 1967, immediately after the Supreme Court affirmed the Federal Trade Commission's order requiring Procter & Gamble to divest itself of Clorox. *FTC v. Procter & Gamble*, 386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303 (1967). Purex alleged that it had been injured as a result of the acquisition of Clorox by Procter & Gamble in 1957. It sought monetary damages against appellees under section 4 of the Clayton Act, 15 U.S.C. § 15 (1976), alleging violations of section 7 of the Clayton Act, 15 U.S.C. § 18 (1976), and sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1976).[2]

Both parties engaged in extensive discovery before trial.[3] After a lengthy bench trial,[4] the trial court entered judgment against Purex. *Purex v. Procter & Gamble*, 419 F.Supp. 931 (C.D.Cal.1976).

On appeal, this court reversed the district court's judgment, *Purex v. Procter & Gamble (Purex I)*, 596 F.2d 881, 883 (9th Cir.

2. Purex did not appeal the district court's judgment in favor of Appellees on the Sherman Act section 1 claim. *Purex I*, 596 F.2d at 883 n.1.

3. Purex originally sought a jury trial. It agreed to waive its jury trial demand on the condition that Judge Gray try the case.

4. The trial generated 5400 pages of transcript and 4500 exhibits were introduced.

1979), and remanded to provide the district court an opportunity to consider the impact of *Brunswick Corp. v. Pueblo Bowl-O-Matic, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) and *Greyhound Computer Corp. v. IBM,* 559 F.2d 488 (9th Cir. 1977), *cert. denied,* 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978).[5] We also requested the district court to separate its findings of fact and conclusions of law to facilitate appellate review. *Purex I,* 596 F.2d at 885, 889, 890. Finally, we did not foreclose the district court from hearing additional evidence on some of the issues in the case. *Id.* at 888–89 n.7; *id.* at 891 (Enright, J., concurring).

At a conference called by the trial court following the remand it indicated that it had reviewed the cases referred to in our decision and was of the opinion that they did not affect its original decision. It requested counsel for Procter & Gamble to prepare findings of fact and conclusions of law, and suggested that Purex submit its written objections to the findings and conclusions submitted by Procter & Gamble. Purex agreed to this procedure. However, at the same time that Purex submitted its objections to Procter & Gamble's proposed findings and conclusions, it also moved to reopen the record to submit additional evidence.

The trial court, after making minor modifications, adopted the findings and conclusions submitted by Procter & Gamble. It stated that it had reviewed both parties' submissions, and that the findings and conclusions were its own irrespective of the source of their initial drafting. In its memorandum of decision, the trial court discussed the decisions cited to it by this court, as well as this court's more recent decision in *California Computer Corp. v. IBM,* 613 F.2d 727 (9th Cir. 1979). The court again concluded that there had been no antitrust

violations and that, in any event, Purex's alleged injuries had not resulted from the merger. Finally, it denied Purex's motion to submit additional evidence because the evidence Purex sought to submit would have been relevant to issues litigated in the original trial and could have been submitted at that time.

Purex appeals, arguing that the district court did not follow this court's mandate in making its findings and conclusions,[6] and that the district court abused its discretion in denying Purex's motion to submit new evidence.

## II

### PUREX'S ANTITRUST INJURY

■ We stated in *Purex I,* that

[e]ven if Procter's acquisition of Clorox had anti-competitive consequences, Purex cannot recover under section 4 unless it established that it suffered injury from the acquisition's anti-competitive effects.

596 F.2d at 889. Because the district court in *Purex I* failed to separate its findings and conclusions, we could not be certain that the court had adequate factual support in the record from which it could conclude that Purex had suffered no antitrust injury as a result of the merger. *Id.* On remand the district court again explicitly concluded that the evidence failed to show that the alleged anti-competitive effects of the merger "were the cause of the injuries for which plaintiff seeks damages in this action." This conclusion is now supported by extensive findings. On this second review, our task is to determine whether the district court's findings are supported by the record.

The district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *Chandler Supply*

---

5. Both *Brunswick* and *Greyhound* were decided after the district court entered judgment against Purex, but before the case was submitted to this court.

6. Although Purex has phrased the question for review as whether the district court, on remand, in making its findings and conclusions

adhered to the mandate, our reading of the district court's memorandum of decision convinces us that the court did exactly what we requested. We therefore treat Purex's appeal as challenging the specific findings of fact and conclusions of law made by the district court.

*Co. v. GAF Corp.*, 650 F.2d 983, 989 (9th Cir. 1980).[7] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir. 1981). Applying this standard to the findings relating to antitrust injury, we are not convinced that a mistake has been made.

Purex sought to establish that as a result of the Procter & Gamble-Clorox merger: (1) its share of the liquid bleach market declined; and (2) it was deterred from expanding geographically. The district court found, however, that Purex's declining market share resulted from its own policy choices and that these policy choices had not been made because of the merger.[8] The district court also found that Purex's expansion plans were in no way affected by the merger but again resulted from internal policy choices made by Purex management.[9]

Much of the evidence submitted in this case was conflicting. As only one example, Purex's chief executive testified that Clorox's response to Purex's attempt to market its liquid bleach in Erie, Pennsylvania taught him that Purex could not hope to compete with post-merger Clorox on a national basis. However, other Purex documents introduced into evidence suggested that Purex was satisfied with the initial response it received in Erie, and chose to withdraw because of distribution problems. The district judge found the contemporaneous documents persuasive, and accordingly discounted the testimony of Purex's chief executive. Such choices are for the factfinder, not the reviewing court. After reviewing the record, we are persuaded the district court was not clearly erroneous in its findings that support its holding that Purex did not suffer antitrust injury.[10]

Accordingly, we affirm the district court's conclusion that Purex cannot recover damages under section 4 of the Clayton Act.[11]

7. Purex argues that the district court's findings do not deserve much weight because the district court merely adopted appellees' submissions with minor modifications. We have frequently criticized the wholesale adoption of the prevailing party's submitted findings by the trial court, and we do engage in a more careful scrutiny of those findings than we would had they been prepared by the district judge. *See, e. g., Hagans v. Andrus*, 651 F.2d 622, 626 (9th Cir. 1981); *United States v. Washington*, 641 F.2d 1368, 1371 (9th Cir. 1981). Here, however, the district court did not mechanically adopt the proposed findings but, from all indications, carefully reviewed them. *See Photo Electronics Corp. v. England*, 581 F.2d 772, 777 n.5 (9th Cir. 1978). Moreover, as Purex acknowledges, most of the proposed findings were taken from the district judge's original opinion. There is no suggestion that the original opinion was other than his own. Finally, we note that even though we carefully scrutinize the record, we still apply the clearly erroneous standard to the district court's findings. *Hagans*, 651 F.2d at 626; *Photo Electronics*, 581 F.2d at 777.

8. Among the specific policy choices the district court found Purex had made, which affected its share of the liquid bleach market, were the following: (1) a product diversification program; (2) the introduction of "dry bleach" into

the market; and (3) the manufacturing of high quality liquid bleach for sale by chain stores under private labels. *See generally, Purex*, 419 F.Supp. at 943–45. The district court further found that although Purex's share of the liquid bleach market declined, its profits showed a steady increase during the period in question.

Notwithstanding the choices made by Purex's management, Purex could have recovered damages under section 4 if it proved that at least part of its inferior market position was attributable to the claimed section 7 violations. *Purex I*, 596 F.2d at 889. The district court found on the question of causation however that Purex failed to sustain its burden of proving that its inferior market position was the result of anything but its policy choices.

9. The district court found that Purex chose not to expand geographically primarily because it chose to invest in other enterprises.

10. The district court in all made 185 specific findings of fact.

11. Because we hold that the district court's conclusion of law that Purex did not suffer antitrust injuries is supported by its specific findings on that issue, we need not consider whether the district court's conclusion that Procter & Gamble and Clorox did not commit any antitrust violations is also correct.

## III

### DENIAL OF PUREX'S MOTION

■ The district court denied Purex's motion to reopen the record on the ground that the evidence Purex sought to introduce could have been introduced at the original trial. Purex argues that this is inconsistent with our opinion in *Purex I* where we advised the district court that it could reopen the record. Purex reads the prior opinion too expansively.

We reversed in *Purex I* to permit the district court to consider two cases that came down after it had decided *Purex I* and to separate its findings of fact and conclusions of law so that on further review the appellate court could determine whether the conclusions of law were supported by adequate findings. Our suggestion that the district court was not foreclosed from hearing additional evidence on remand, *Purex I*, 596 F.2d at 888–89 n.7, was made in the context of our conclusion that the Supreme Court decision in *Brunswick* required specific findings by the district court as to whether the merger "produced anti-competitive effects or inspired anti-competitive conduct." *Id.* at 888. We feared that because *Brunswick* was decided after the original trial the record might be insufficiently developed for the district court to make specific findings on these points. We did not, however, mandate reopening, but left a decision as to the need for reopening to the sound discretion of the district court. *See Skehan v. Board of Trustees*, 590 F.2d 470, 478 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).

The district judge concluded that the record was sufficiently developed to permit the specific findings required by *Brunswick*. He therefore declined to reopen the record to admit evidence that had been available at trial. *See generally Zenith Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 332–33, 91 S.Ct. 795, 803, 28 L.Ed.2d 77 (1971); *Thomas v. S.S. Santa Mercedes*, 572 F.2d

1331, 1336 (9th Cir. 1978); *Locklin v. Switzer Bros., Inc.*, 299 F.2d 160, 169 (9th Cir.), *cert. denied*, 369 U.S. 861, 82 S.Ct. 950, 8 L.Ed.2d 18 (1962). Our scope of review of this decision is quite limited. 6A *Moore's Federal Practice* ¶ 59.04[13] at 59–36 (2d ed. 1979); *see Skehan*, 590 F.2d at 478. We find no abuse of discretion.[12]

## IV

### CONCLUSION

We conclude that the district court was not clearly erroneous in denying damages to Purex on the basis that Purex did not prove that it was injured as a result of the alleged antitrust violations. We further conclude that the district court did not abuse its discretion in declining to reopen the record for additional evidence.

AFFIRMED.

---

12. In the initial trial Purex had the burden to prove injury caused by the defendants' antitrust violations. Neither *Brunswick* nor this court's decision in *Purex I* changed that. There is no reason to reopen to allow Purex to attempt to prove what it should have but failed to prove the first time.