PETER PAUL AND EVANGELYN B. GLAGOLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Glagola v. Commissioner
Docket No. 21531-86
United States Tax Court
T.C. Memo 1990-180; 1990 Tax Ct. Memo LEXIS 193; 59 T.C.M. (CCH) 321; T.C.M. (RIA) 90180; April 5, 1990
Michael Harris, for the petitioners. Gerald W. Douglas, for the respondent. WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined the following deficiency in, and additions to, petitioners' 1981 Federal income tax: Additions to tax under sections [1]
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654(a)
6661
$ 15,585.70
$ 2,295.93
$ 779.29 * $ 580.25
$ 1,559.00.
The issues for decision are: (1) whether petitioners are entitled to deductions for business expenses in excess of the amounts *194 allowed by respondent; and (2) whether petitioners are liable for additions to tax under sections 6651(a)(1), 6653(a)(1) and (2), 6654(a), and 6661. There are two preliminary matters to be addressed. The first is petitioners' request for a post-trial opportunity to substantiate the deductions claimed on their 1981 income tax return. To justify such relief, petitioners state that they were not fully prepared at trial and they note that the Court denied their request for continuance of the trial. To place petitioners' request in perspective, we note that the Court's Standing Pre-Trial Order was sent to petitioners five months before trial and contained the warning, "continuances, even on joint motion, will be granted only in exceptional circumstances. (See Rule 134, Tax Court Rules of Practice and Procedure.)" Nevertheless, two weeks before trial, petitioners requested a continuance on the grounds that their "proposed" attorney had a scheduling conflict on the first day of the two-week trial session and he was in the process of submitting papers for admission to practice before the Tax Court. Petitioners also stated that they required additional time to obtain "financial data *195 and audit information" to present their case, but they offered no explanation for their failure to have such information nor did they state what had to be done to obtain it. In view of the fact that petitioners' case only required substantiation of the deductions claimed on their Schedule C for the year 1981, and the applicability of various additions to tax, the Court denied their motion for continuance. Petitioners' attorney renewed petitioners' motion for continuance at the start of trial and set forth his grounds for a continuance as follows: My grounds for the motion are that I have only come into the case at "the 11th hour." I have had a very short time to discuss what materials we have with Mr. Douglas, counsel for the Respondent, and I have advised him that if we had 45 days to assemble the original documents that will establish the deductions that are at issue and if we had time to stipulate to the facts that will be apparent after those originals are submitted for this review that I believe that proceedings in the Court will be far more efficient and, to a great extent, expedited; and I felt that a continuance would be in the best interests of economy for both judicial *196 time and counsel time. And we have made a motion -- or Mr. Glagola had made a motion, I think, to continue, and I understand the Court had denied it once. I'm renewing it because I think that it will bear a great deal of fruit if we can get those original checks that he's got not available today, and send them up for review with counsel's office. The Court again denied petitioners' motion for continuance in light of the fact that the only issues presented in the case involve the substantiation of certain deductions and the applicability of certain additions to tax. The Court noted that petitioners had violated the Court's Standing Pre-Trial Order by failing to submit a trial memorandum, by failing to submit a stipulation of fact, and by failing to identify and provide respondent with all documents or materials to be used at trial at least 15 days before the call of the calendar. Nevertheless, the Court permitted petitioners to proceed at trial. The Court also permitted petitioners' new attorney to introduce at trial copies of documents, rather than the originals, but ordered petitioners to produce the originals for respondent's inspection after trial, and kept the record *197 open to give respondent an opportunity to renew his objection to the documents thus accepted for identification. Petitioners now ask the Court to reopen the record to give them a wholesale opportunity to substantiate the deductions claimed on their return. They state the grounds therefor as follows: The background is that Petitioner provided certain materials to the I.R.S. auditor who disallowed all the deductions. There may have been a reason for it, but the action of the auditor left Petitioner somewhat confused. On the other hand, Petitioner believed that certain deductions had already been allowed by the auditor, but on the other hand apparently the auditor had in fact allowed nothing. In light of this background, Petitioner asked for further time to prepare his case (Transcript p. 3) but the motion was denied (Transcript p. 6). We are at a loss to understand how any confusion about the actions of respondent's audit agent could have persisted after respondent issued the notice of deficiency. The notice clearly shows that all expenses claimed on petitioners' Schedule C in the amount of $ 54,283 were disallowed. Even assuming that there was some initial confusion about *198 the agent's actions, we are also at a loss to understand how it could reasonably have lasted more than two years until the date on which this case was tried. In any event, a motion to reopen the record will not be granted unless the evidence to be presented was not available for use at the original trial or could not have been obtained with reasonable diligence. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 332-33 (1971); Purex Corp. v. Procter & Gamble Co. , 664 F.2d 1105, 1109 (9th Cir. 1981), cert. denied 456 U.S. 983 (1982); Mayer v. Higgins, 208 F.2d 781, 783 (2d Cir. 1953); Brown v. Commissioner, T.C. Memo. 1989-452, on appeal (4th Cir., Dec. 6, 1989). Petitioners have made no such showing. They have presented nothing to establish that they did not have ample opportunity to obtain and present the information necessary to substantiate the expenses claimed on their 1981 Schedule C. Accordingly, their motion to reopen the record must and will be denied. The second preliminary matter to be addressed is the admissability of petitioners' documentary evidence. Respondent objected *199 to the admission of all of the documents petitioners offered at trial on the ground that they were not the original writing, as required by Rule 1002 of the Federal Rules of Evidence. As mentioned above, the Court accepted the copies offered by petitioners for identification but held the record open to give respondent an opportunity to inspect the originals. Thereafter, respondent filed a paper in which he withdrew his objections to petitioner's evidence based upon the original writing rule. Accordingly, all of the exhibits proffered by petitioners are hereby accepted into evidence. We note in passing that the deductions suggested by the original documents which petitioners supplied after trial totaled $ 13,930.66 and do not match the aggregate deductions suggested by the exhibits offered at trial in the amount of $ 12,193.98. Neither party has offered an explanation for this disparity. FINDINGS OF FACT Petitioners resided in Anaheim, California, at the time they filed the petition in this case. During the year 1981, Mr. Glagola was employed on a full-time basis by McDonnell Douglas Corporation. Mrs. Glagola worked full-time as a secretary. *200 Mr. Glagola claims that during the year he started a financial planning business, a sole proprietorship called EGM Financial Planners. He claims to have conducted this business on a part-time basis. Mrs. Glagola did not participate in the business. Throughout this opinion we sometimes refer to Mr. Glagola as petitioner. Petitioners' joint 1981 Federal income tax return reported a net loss from Mr. Glagola's financial planning business in the amount of $ 40,783. This amount is computed on Schedule C of their return which lists aggregate deductions for the business of $ 54,283, and gross income of $ 13,500. In his notice of deficiency, respondent disallowed all of the deductions claimed on petitioners' Schedule C. He stated the following reason for this adjustment: Protests. -The tax on your return has been corrected because a deduction, credit, omission of income, or other adjustment as an indication of protest cannot be allowed. Before we enumerate the deductions disallowed by respondent, we note that petitioners abandoned the position that all of the amounts claimed on their return are deductible. On brief, they argue that a different array of deductions, totaling $ *201 32,182, was substantiated at trial. They claim to have substantiated these deductions principally through the testimony of Mr. Glagola. We also note that the documents which petitioners introduced as exhibits at trial suggest expenditures aggregating only $ 12,193.98. Finally, we note that respondent has conceded certain deductions in the amount of $ 1,864.58, as shown on the schedule set out below in the column entitled "conceded by respondent." The following schedule shows the deductions claimed on petitioners' 1981 return, the deductions claimed in their brief, the deductions for which documents were introduced at trial, the deductions for which original documents were produced after trial, and the deductions conceded by respondent: Claimed on
Claimed in
Petitioners'
Petitioners
1981 Return
Post-Trial Brief
Advertising
$  1,200.00
$  1,200.00
Automobile Expenses
4,558.00
3,329.00
Commissions
3,100.00
--
Depreciation
1,004.00
1,004.00
Dues
2,278.00
2,278.00
Legal and Professional Services
5,400.00
478.00
Office Supplies and Postage
879.00
879.00
Rent on Business Property
4,285.00
4,285.00
Repairs
1,781.00   1,781.00 Travel and Entertainment
6,883.00
2,682.00
Utilities and telephone
5,395.00
2,898.00
Other Expenses
Courier
946.00
--
UniTax
380.00
--
Secretarial Service
6,274.00
540.00
Consulting Fees
1,267.00
--
Storage
4,800.00
295.00
Tapes
750.00
584.00
Printing
1,143.00
66.00
Seminars
1,960.00
584.00
Interest expense
--
7,343.00
Casualty loss
--
600.00
Outside Services
--
1,356.00
Doctors
--
--
Contributions
--
Totals
$ 54,283.00
$ 32,182.00
*202 Originals
Documents
After
Conceded by
at Trial Trial
Respondent
Advertising
--
--   --
Automobile Expenses
$  2,305.70
$  2,305.20
$ 456.00
Commissions
--
--   --
Depreciation
--
--   --
Dues
--
--   --
Legal and Professional Services
422.00
122.00
--
Office Supplies and Postage
--
--   --
Rent on Business Property
--
--    429.00
Repairs
--
--   --
Travel and Entertainment
955.32
1,387.06
--
Utilities and telephone
2,515.25
2,515.36 979.58
Other Expenses
Courier
--
--   --
UniTax
--
--   --
Secretarial Service
--
--   --
Consulting Fees
--
--   --
Storage
295.00
--   --
Tapes
42.24
--   --
Printing
38.47
--   --
Seminars
--
[2] 800.00
--
Interest expense
5,020.00
5,070.00
--
Casualty loss
600.00
600.00
--
Outside Services
--
--   --
Doctors
--
130.00
--
Contributions
--
1,001.04
--
Totals
$ 12,193.98
$ 13,930.66
$ 1,864.58
*203 The above schedule reveals that petitioners claimed three items in their post-trial brief which were not deducted on their return. They are: interest expense, $ 7,343; casualty loss, $ 600; and outside services, $ 1,356. Respondent has not objected to these items as new matters or to our consideration of them, and we deem these items to have been tried by express or implied consent of the parties pursuant to Rule 41(b)(1), Tax Court Rules of Practice and Procedure.
We further note that petitioners apparently provided cancelled checks to respondent for two categories of expenses which were not raised in the pleadings or at trial. These are "doctors" in the amount of $ 130 and "charitable contributions" in the amount of $ 1,001.04. Petitioners offered no such items at trial and they are not among the exhibits in the Court record. Accordingly, we will not further consider these items. OPINION This is a garden-variety substantiation case involving expenses allegedly incurred in connection with Mr. Glagola's business as a financial planner. Respondent disallowed the deductions claimed on the Schedule C attached to petitioners' 1981 return, ostensibly because he determined *204 that petitioners had failed to substantiate their eligibility to deduct such amounts. Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure. To meet that burden, they must produce competent and credible evidence to show that the expenses were in fact paid or incurred in connection with Mr. Glagola's trade or business and that they are ordinary and necessary expenses for such a trade or business. At the outset, it is noteworthy that petitioners' return claimed a deduction in the amount of $ 380 for "unitax," which petitioner explained was necessary because he prepared tax returns or employed tax return preparers as part of his financial planning business. He also claimed a deduction in the amount of $ 1,267 for consulting fees which he described as "primarily in the tax area." It would seem, therefore, that petitioner held himself out to others as having expertise in the preparation of tax returns. It is also noteworthy that petitioner claimed a deduction in the amount of $ 4,800 for "storage." Petitioner explained that he "put everything in boxes and put them into storage * * * knowing the *205 Internal Revenue would want to see them someday." On a number of occasions during his testimony, petitioner stated that he had records or documents to substantiate certain deductions but did not have such records in court. For example, petitioner testified that he had "ample loan documents" to substantiate his claim for an interest expense deduction but admitted that he did not have them available at trial. Petitioner testified that he had records and literature from the numerous seminars which he attended during the year but explained that he could not produce any such documents because "the truck wasn't big enough." Petitioner also testified that he had copies of church bulletins containing advertisements for his services "in my records" but not at trial. Finally, petitioner testified that he maintained a log of travel and entertainment but acknowledged that he did not have the log available. In summary, petitioner testified that he had financial records available but offered no explanation for his failure to produce such records at trial. Against the backdrop of this testimony, we note the difficulty which petitioner had in substantiating any of the deductions claimed on his *206 return in the aggregate amount of $ 54,283. We also observe several facts which make the Court skeptical that petitioners paid $ 54,283 in connection with Mr. Glagola's alleged financial planning business. First, the net loss reported from Mr. Glagola's part-time venture, together with petitioners' personal exemptions for the year, fully absorbed the taxable income realized from the full-time employment of both petitioners. In fact, the cash expenditures which petitioners claim to have made in Mr. Glagola's business amount to $ 53,279 (i.e., total deductions of $ 54,283 less non-cash deductions of $ 1,004) or approximately 97 percent of petitioners' income for the year. Moreover, the record in this case fails to reveal the source of the funds used by petitioners for the alleged expenditures. Petitioners' return for the year does not reflect any interest deduction for loans used to finance the business. At trial, petitioners presented vague testimony by Mr. Glagola about loans, but they offered no credible evidence that any such loans existed. Similarly, petitioners' return for the year does not reflect more than a small amount of interest and dividend income and thus suggests *207 that petitioners did not have sufficient savings or investments to fund both their living expenses and Mr. Glagola's alleged business expenditures. As we see it, petitioners' evidence at trial consisted of two components. First, they introduced copies of documents which suggested expenditures in the aggregate amount of $ 12,193.98. After trial, petitioners provided respondent with "original documentation" for $ 11,518.27 of the exhibits introduced at trial. We note that all of the original documents produced after trial suggest expenditures totaling $ 13,930.66. However, such amount apparently includes documents other than those introduced at trial. In any event, with only one exception, none of the documents introduced at trial by itself substantiates a deductible expenditure. The only exception is a statement of account from petitioners' account with Orange County Teachers Credit Union for the period ending December 31, 1981, which shows a finance charge in the amount of $ 150.52. We believe that document is sufficient to substantiate an interest deduction in the amount of $ 150.52. With that exception, however, all of the documents introduced by petitioners at trial require *208 further evidence to substantiate a deductible expenditure. In order to meet that burden, petitioners presented the second component of their evidence at trial consisting of the testimony of Mr. Glagola. However, the Court found Mr. Glagola's testimony to be vague, contradictory and, for the most part, incredible. For example, Mr. Glagola testified that he spent $ 6,274 for "secretarial help" during the year but could not remember the name of the secretary he employed. He testified that he paid $ 1,267 to consultants but could not remember the name of any such consultant. He testified that he spent $ 1,143 for printing during the year but could not remember the name of any printer which he hired. He testified that he spent $ 3,100 for commissions during the year but could not remember the name of any person to whom commissions were paid. On a number of occasions, petitioner seemed to change his testimony in midstream when he realized its effect. For example, in attempting to substantiate automobile expenses in the amount of $ 2,305.20, Mr. Glagola initially stated that he drove his wife to work but seemed to change his testimony to state that his wife walked to work. Later, *209 in attempting to substantiate the loss of the other family car as a business expense, Mr. Glagola answered questions from his attorney as follows: Q All right. And Item -- Exhibit 8 seems to be a reference for a car expense. Can you explain what that is, and -- and why it relates to an appropriate deduction for a business expense? A It was a VW and it had been parked on a church property and one night when my wife had been -- had another ride home and when we went to pick up the car it was totally demolished. Q And did you -- A Someone had ran into it. Q Did you use that Volkswagen in your business? A No, my wife used that. Q So it had nothing to do with your business? A Well, I did at times when we swapped cars and all. I mean, she didn't go anywhere. Anything that ran I used. Q For your business? A Yes. Q So you -- A So I didn't have to walk. Q So you -- A She could walk. (Laughter.) On cross examination, Mr. Glagola finally admitted that his wife might have used the automobile for personal purposes. The trier of fact is not bound to accept implausible and incredible testimony of interested parties or witnesses that is not corroborated by *210 any other evidence. Havas v. Commissioner, an unreported case (9th Cir., April 30, 1973, 73-2 USTC par. 9561, 41 AFTR 2d 403), affg. T.C. Memo. 1970-318; Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Davis v. Commissioner, 88 T.C. 122, 140-141 (1987), affd. 866 F.2d 852 (6th Cir. 1989); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). We reject Mr. Glagola's testimony as substantiation for any deductions. In his brief respondent conceded that petitioner is entitled to deductions totaling $ 1,864.58. We find this amount reasonable, and accept respondent's concession of such Schedule C deductions for the year 1981. Accordingly, we hold that petitioners are entitled to aggregate business deductions in the amount of $ 1,864.58 and an interest deduction of $ 150.52 for the year 1981. Respondent also determined additions to tax under section 6651(a)(1) for failure to timely file a tax return, under section 6653(a)(1) and (2) for underpayment due to negligence or intentional *211 disregard of rules and regulations, and under 6654(a) for underpayment of estimated tax. Petitioners bear the burden of proving that these additions to tax are inapplicable. United States v. Boyle, 469 U.S. 245 (1985); Neely v. Commissioner, 85 T.C. 934, 947 (1985); Rule 142(a), Tax Court Rules of Practice and Procedure.
At trial, petitioners failed to present any evidence concerning these additions and, in fact, made no mention of them at all. Similarly, they advanced no argument about them in their post-trial brief. Accordingly, we sustain respondent's determination of the above additions to tax. Respondent also determined an addition to tax for substantial underpayment of income tax, pursuant to section 6661(a). This section, however, applies to returns for which the "due date" is after December 31, 1982. Sec. 323(c), Tax Equity and Financial Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 615. Although petitioners did not file their 1981 tax return until July 22, 1983, it was "due" on April 15, 1982. Therefore, the application of section 6661(a) to petitioners' 1981 return is improper. To reflect the foregoing, Decision will *212 be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for 1981. * 50% of interest on the underpayment due to negligence.↩
2. Labeled "Category 9- travel and auto miscellaneous" in Respondent's Review of petitioner's evidence submitted at trial and respondence thereto.↩