**Bradley BRAZILL, Plaintiff,**

**v.**

**CALIFORNIA NORTHSTATE COLLEGE OF PHARMACY, LLC, California Northstate University, LLC, and Does 1 through 10, inclusive, Defendants.**

**No. CIV. 2:12–1218 WBS GGH.**

United States District Court, E.D. California.

*June 5, 2013.*

Johnny L. Griffin, III, Manolo H. Olaso, Law Offices of Johnny L. Griffin III, Sacramento, CA, for Plaintiff.

Brittany Y. Ng, William A. Munoz, Murphy Pearson Bradley and Feeney, Sacramento, CA, for Defendants.

*MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT*

WILLIAM B. SHUBB, District Judge.

Plaintiff Bradley Brazill brings this action against defendants California Northstate College of Pharmacy, LLC ("College"), and California Northstate University, LLC ("CNU"), arising from defendants' allegedly wrongful conduct related to the termination of plaintiff's employment. Plaintiff brings four claims: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; (2) age discrimination under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900–12996; (3) retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h); and (4) wrongful termination in violation of public policy on the basis of violations of the ADEA, FEHA, and FCA. (Docket No. 10.)

Presently before the court is defendants' motion for summary judgment or, alternatively, partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket No. 29.)

I. *Factual and Procedural Background*

The College is a private pharmacy college located in Rancho Cordova, California.[1] (Cheung Decl. ¶ 2 (Docket No. 29–8).) Alvin Cheung is its President, (*id.* ¶ 1), and Norman Fong is its Vice President and Director of Operations, (Fong Decl. ¶ 1 (Docket No. 29–12).) In April 2009, the College hired plaintiff as Chair of the Department for Clinical and Administrative Sciences. (Brazill Decl. ¶ 3 (Docket No. 30–2).) He was fifty-two years old at the time. (*Id.*)

During his employment, plaintiff came to believe that College students were using federal student aid from Davenport University to pay for College expenses.[2] (*See id.* ¶ 15.) Besides discussing his concerns about this practice with other College employees, plaintiff told his supervisor, Dean David Hawkins, several times that the practice was "illegal."[3] (*Id.*) However, he never expressed his concerns about the issue to President Cheung or Vice President Fong. (Munoz Decl. Ex. 10 ("Brazill Dep.") at 141:7–13, 142:4–8 (Docket No. 29–5); Cheung Decl. ¶ 12; Fong Decl. ¶¶ 3–4.)

President Cheung made the decision to terminate plaintiff in July 2011. (Cheung Decl. ¶¶ 13, 16.) According to President Cheung, the basis for this decision was that plaintiff created a conflict of interest by hiring faculty to work in his private pharmacy, treated another faculty member inappropriately, and vented his frustra-

1. CNU was formed on December 19, 2011. (Cheung Decl. ¶ 7 (Docket No. 29–8).) It is a separate entity from the College. (*Id.*) Defendants contend that because CNU was formed after plaintiff was hired, it cannot be his employer. Defendants then argue that because each of the statutes under which plaintiff brings claims imposes liability only on an aggrieved party's employer, summary judgment must be granted in CNU's favor on all of plaintiff's claims. Plaintiff does not oppose CNU's motion. (Opp'n at 1:21 n. 1 (Docket No. 30).) CNU's motion for summary judgment will therefore be granted.

2. Defendants' objections to the evidence underlying this fact on the grounds of hearsay, foundation, relevance, and the sham affidavit rule are overruled.

3. Defendants' objections on the grounds of hearsay, foundation, and relevance to the evidence underlying this fact are overruled.

tions about the College's administration during a visit from an accreditation organization. (*See id.* ¶ 13.) Plaintiff was terminated on July 15, 2011. (Brazill Decl. ¶ 3.)

After plaintiff's termination, Dean Hawkins hired Sonya Frausto, an assistant professor, to fill plaintiff's former position as Chair of the Department for Clinical and Administrative Sciences. (*See* Munoz Decl. Ex. 12 ("Hawkins Dep.") at 56:8–13 (Docket No. 29–5).) She was thirty-six years old at the time. (*See* Munoz Decl. Ex. 13 ("Frausto Dep.") at 56:8–13 (Docket No. 29–6).) The parties dispute whether her position was interim or permanent.

Sometime later, Dean Hawkins replaced Frausto with James Palmieri, another faculty member at the College. (*See id.* at 58:23–24.) Palmieri was fifty-one years old at the time of his appointment. (Vera Decl. ¶ 14 (Docket No. 29–10).)

II. *Legal Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment ...." *Id.*

III. *Discussion*

A. *Age Discrimination*

The ADEA prohibits an employer from discriminating against an employee who is at least forty years of age because of that person's age. 29 U.S.C. §§ 623(a)(1), 631(a); *see Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (in a disparate treatment action, plaintiff must prove that his age was the cause in fact of the adverse employment action). FEHA imposes liability on an employer for discharging an employee over forty years of age because of that person's age. Cal. Gov't Code §§ 12926(b), 12940(a); *see Harris v. City*

*of Santa Monica,* 56 Cal.4th 203, 232, 152 Cal.Rptr.3d 392, 294 P.3d 49 (2013) (plaintiff must prove discrimination was a substantial motivating factor in employment decision).

There are two ways for a plaintiff to avoid summary judgment on a disparate treatment claim. The plaintiff may produce direct evidence of discrimination, *see Enlow v. Salem–Keizer Yellow Cab Co.,* 389 F.3d 802, 812 (9th Cir.2004), or may proceed under the burden-of-proof and production framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 794, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *see Shelley v. Geren,* 666 F.3d 599, 607 (9th Cir.2012) (noting that "nothing in *Gross* overruled our cases utilizing this framework to decide summary judgment motions in ADEA cases").[4] California courts look to federal precedent when interpreting FEHA because of its similarity to the ADEA. *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000). To analyze FEHA claims, courts use the *McDonnell Douglas* burden-shifting framework and other federal employment law principles.[5] *See Schechner v. KPIX–TV,* 686 F.3d 1018, 1023 (9th Cir.2012); *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1112 (9th Cir.2011).

Plaintiff and defendants analyze plaintiff's claims of discrimination based on age under the *McDonnell Douglas* framework. Under that framework, plaintiff must first establish a prima facie case of age discrimination. *Shelley,* 666 F.3d at 608. If successful, the burden of production shifts to defendants to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* Plaintiff then must "demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age discrimination." *Id.*

To make out a prima facie case of age discrimination, plaintiff must show that he: (1) was a member of the protected class (aged forty or older); (2) was performing his job satisfactorily; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1421 (9th Cir.1990).

1. *Plaintiff's Prima Facie Case*

The parties dispute whether plaintiff can satisfy the second and fourth ele-

4. Only at trial does the plaintiff have the burden of proving that age was the cause in fact of the adverse employment action. *Shelley,* 666 F.3d at 608.

5. The parties did not address whether *Harris* effected any change in the court's analysis of a FEHA age-discrimination claim at the summary judgment stage. *Harris* was a mixed-motives case. At trial, the defendant asked for an instruction that if the jury found a mix of discriminatory and legitimate motives, it could avoid liability by proving that a legitimate motive alone would have led it to make the same decision to terminate plaintiff. *Harris,* 56 Cal.4th at 211, 152 Cal.Rptr.3d 392, 294 P.3d 49. The California Supreme Court noted that "[i]n FEHA employment discrimination cases that do not involve mixed motives, we have adopted the three-stage burden-shifting test established by *McDonnell Douglas* ...." *Id.* at 215, 152 Cal. Rptr.3d 392, 294 P.3d 49. Because there is no evidence before the court at this stage that suggests a mixed motive on the part of the College, it proceeds under the *McDonnell Douglas* framework for the purposes of resolving the instant motion. *See McFarland v. Sears Holdings Mgmt.,* C 11–4587 PJH, 2013 WL 1333720, at *3 (N.D.Cal. Mar. 29, 2013) (applying *McDonnell Douglas* framework to FEHA claim post-*Harris*). This is consistent with the Ninth Circuit's practice, noted above, of applying the framework to decide summary judgment motions on ADEA claim after *Gross.*

ments of the prima facie case. As to the second factor, defendants argue that plaintiff was not performing his job satisfactorily for the same reasons that allegedly prompted his termination: he created a conflict of interest by hiring faculty to work in his private pharmacy, treated another faculty member inappropriately, and vented his frustrations about the College's administration during a visit from an accreditation organization. (*See* Mem. in Supp. of Mot. at 11:23–14:4 (Docket No. 29–1).)

To satisfy the second element, plaintiff offers evidence that he received a four percent merit increase in pay in 2010 and that his supervisor rated his performance as good to excellent.[6] (Brazill Decl. ¶ 4; Hawkins Dep. at 26:22–27:9, 79:18–19.) Plaintiff's proffer gives rise to a dispute of fact whether he was performing his job satisfactorily. The court therefore finds that plaintiff has satisfied the second element of the prima facie case. *See Douglas v. Anderson,* 656 F.2d 528, 533 n. 5 (9th Cir.1981) ("In establishing a prima facie case, [plaintiff] need only produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue.").

As to the fourth element, both parties seem to agree that to determine whether a plaintiff has been replaced by a substantially younger employee, a court should look to the age of the plaintiff's permanent replacement. Indeed, courts have shown a reluctance to allow an employer to defeat the employee's prima facie case by pointing to the fact that it replaced plaintiff with a temporary, or interim, employee who fell within the same protected class.[7] The question of whether an employee is temporary or permanent, however, is always relative. No employment relationship lasts forever, and in a sense all employment, like everything else, is temporary.

Here, it is not the employer who attempts to defeat plaintiff's prima facie case by pointing to the age of his immediate replacement. Rather, it is the employee who asks the court to consider Frausto as his replacement for purposes of establishing a prima facie case. In these circumstances, the court perceives the distinction between temporary and permanent employment to be less significant. Although some courts in these kinds of cases have still looked only to the age of the permanent replacement,[8] other courts have con-

6. The court does not rely on Hawkins' testimony for the fact that plaintiff received a raise, but instead for the point that had plaintiff received a raise, it would be merit-based. Defendants' objections to Hawkins' testimony are therefore overruled.

7. *See McCarthy v. N.Y. City Technical Coll.,* 202 F.3d 161, 165 (2d Cir.2000) ("Replacement by an older person may not necessarily be fatal to an age discrimination claim if, for example, a plaintiff can show that his age was the true motivation and the older replacement was hired temporarily as a means of insulating defendant from ADEA liability."); *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 561 (10th Cir.1996) (concluding a fifty-two year old plaintiff, who was replaced by a fifty-seven year old employee, presented sufficient evidence that the plaintiff's age was a motivating factor in his termination, where there was sufficient evidence to infer that the replacement was hired to be a defense against any age discrimination claim by the plaintiff); *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1499–1501 (11th Cir.1991) (finding a fifty-year old plaintiff established a prima facie case of age discrimination, despite being replaced by an older employee, where he was told that he had been around "too long," was "too old," and was "making too much money" and the older replacement employee resigned after only one day and was replaced by a twenty-four year old trainee).

8. *See Lewis v. St. Cloud State Univ.,* 467 F.3d 1133 (8th Cir.2006) (where dean of university alleging age discrimination was temporarily replaced by an associate dean six-and-a-half years younger and permanently replaced by a man only two-and-a-half years younger, the court explained that the former dean could

sidered the age of the temporary replacement for purposes of determining whether plaintiff has made a prima facie case.[9] Where the employer replaces the plaintiff with either a temporary or permanent employee outside of the plaintiff's protected category, an inference of discriminatory intent may arguably be drawn.

Here, the court concludes that whether Frausto is to be considered a temporary or permanent replacement of plaintiff is a disputed issue of ultimate fact which is subject to conflicting interpretations. According to the evidence proffered by defendants, Dean Hawkins had responsibility for finding a replacement for plaintiff. (*See* Hawkins Dep. at 55:22–56:9, 57:24–58:1.) He explained that "what we do when something like this happens, we have to appoint an interim department chair while we search for a full-time department chair." (*Id.* at 55:19–21.) After no other faculty expressed interest in assuming the position, Frausto testified that she accepted it on a temporary basis while Dean Hawkins searched for a permanent replacement. (*See* Frausto Dep. at 15:12–17, 16:7–8, 136:12–18; *see also* Hawkins Dep. at 55:8–13.) Dean Hawkins was assisted by the other department chair and the associate deans. (Hawkins Dep. at 58:5–7.)

After a period of time and "having met and talked to [Palmieri] several times, [Dean Hawkins] realized that he would serve the college well by taking on the position of department chair ...." (*Id.* at 58:12–15.) Dean Hawkins then appointed Palmieri to plaintiff's former position on, what he testified to be, a permanent basis. (*Id.* at 58:8–24.)

On the other hand, plaintiff contends that the College replaced Frausto with Palmieri only after he complained to the Equal Employment Opportunity Commission ("EEOC") and the Department of Fair Employment and Housing ("DFEH") about age discrimination. (Opp'n at 8:23–25 (Docket No. 30).) Plaintiff filed his age discrimination claims with the EEOC and DFEH in January and February of 2012.[10] (Brazill Decl. ¶ 13.) Although it is clear that Frausto was appointed to the chair position on August 1, 2011, no party has indicated to the court exactly when Palmieri assumed the position.[11] (*See* Hawkins

not establish a prima facie case because "the important datum here is the age of the person whom the [u]niversity chose as [his] permanent replacement"); *Potera–Haskins v. Gamble,* 519 F.Supp.2d 1110, 1118–19 (D.Mont. 2007) (female plaintiff alleging sex discrimination could not make prima facie case where permanent replacement was also female, even though temporary replacement was male, because a national search to find best qualified person was both reasonable and necessary); *Sheets v. Nat'l Computer Sys., Inc.*, Civ. No. 3–99–30091, 2000 WL 33364120, at *6 (S.D.Iowa Dec. 7, 2000) ("The limited case law in this area suggests the Court should look to the permanent replacement employee, not the temporary fill-in."); *Ashagre v. Southland Corp.*, 546 F.Supp. 1214, 1219 (S.D.Tex. 1982) (in Title VII race discrimination case, looking to permanent replacement rather than temporary replacement in determining whether prima facie case was established).

9. *See Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 317–18 (6th Cir.2007) ("We find that the fourth element of the prima facie case in an age discrimination case can be met even where the new hire, who is a member of the non-protected class, has the title of 'temporary' employee. In cases where the new hire takes on the plaintiff's former job responsibilities, merely designating the new hire 'temporary' will not defeat the fourth element."); *Cyprian v. Auburn Univ. Montgomery,* 799 F.Supp.2d 1262, 1280 (M.D.Ala.2011) (where terminated plaintiff's duties were initially split by one temporary employee belonging to her protected class and another temporary employee outside her protected class, plaintiff could demonstrate that she was replaced, at least in part, by a person outside her protected class for purposes of the prima facie case).

10. Defendants' objections on the grounds of foundation and relevance to the evidence underlying this fact are overruled.

11. The emails from student Chike Okolo, (Brazill Decl. Exs. B, C), do not establish

Dep. at 59:21–22 (could not recall how long Frausto was in the interim position, but may have been six months).)

Plaintiff also argues that "Palmieri was installed rather quickly compared to how [p]laintiff was hired." (Opp'n at 9:1.) Plaintiff draws this conclusion from Dean Hawkins' testimony that "having met and talked to [Palmieri] several times, I realized that he would serve the college well by taking on the position of department chair, which he willingly did." (Hawkins Dep. at 58:12–15.) Plaintiff notes that, in contrast, when he was hired for the same position, he met with Dean Hawkins several times, gave a presentation to the faculty, faculty provided feedback on his appointment, Dean Hawkins recommended the hire, and then the College president and Board of Trustees approved the recommendation. (*Id.* at 19:22–25, 21:6–18 (describing what would have been the process for hiring plaintiff).) It is unclear whether Dean Hawkins' statement regarding Palmieri is intended to be a complete description of how Palmieri was hired. However, the statement—in conjunction with the evidence of plaintiff's complaints to the EEOC and DFEH—does allow for the inference that the College quickly replaced Frausto with Palmieri once it became concerned that plaintiff was alleging that he had been terminated because of his age. From that, it might also be inferred that Frausto's position was really permanent and only later labeled "temporary" to avoid charges of age-based discrimination.

The College responds that it "undertook a thoughtful application and interview process to select" Palmieri. (Mem. in Supp. of Mot. at 14:19–20.) It also argues that it immediately began looking for a permanent replacement for plaintiff after his termination. (Reply at 3:14–19 (Docket No. 31).) The College, however, offers no evidence of such a process or a of search immediately commencing for someone to permanently replace plaintiff after it placed Frausto in his former position.[12] The absence of such evidence is consistent with the inference that Frausto was intended to be plaintiff's permanent replacement.

Considering the evidence in the light most favorable to plaintiff, as the court must, there is a question of fact that Frausto—who is substantially younger than plaintiff—was really a permanent replacement for plaintiff and was only given the "interim" title so that the College could insulate itself from charges of age discrimination. By raising this factual issue, plaintiff has produced enough evidence to meet the fourth element of the prima facie case. *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994) ("The requisite degree of proof necessary to establish a prima facie case for ... ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.").

2. *Nondiscriminatory Reasons*

Because plaintiff has established a prima facie case of age discrimination, the burden of production now shifts to plaintiff's employer, the College, to articulate a legitimate nondiscriminatory reason for his termination. *Shelley,* 666 F.3d at 608. The College identifies three explanations for its decision to terminate plaintiff. They are (1) that plaintiff inappropriately vented his frustrations with the College's administration during a visit by an accredi-

when Palmieri was appointed to the chair position.

12. Hawkins' testimony describing what the College would do in a situation where a department chair was terminated is not evidence of when he began the search to fill plaintiff's position. (*See* Hawkins Dep. at 55:19–21.)

tation organization; (2) that plaintiff created a conflict of interest by hiring faculty to work in his private pharmacy; and (3) that plaintiff retaliated against an employee. (*See* Cheung Decl. ¶ 14.) By articulating these explanations, the College has satisfied its burden of producing a legitimate, nondiscriminatory reason for its adverse employment action. Plaintiff retains the burden of persuasion and must show that the College's proffered reasons are pretext. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir.2000).

3. *Pretext*

Plaintiff may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.1998) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir.2005).

If plaintiff offers indirect evidence that "tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable," such evidence must be "specific" and "substantial" in order to create a triable issue of fact as to whether the College had a discriminatory motivation. *Godwin*, 150 F.3d at 1222; *see Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir.2006).

In contrast, if plaintiff offers direct evidence of discriminatory motive, he can show there is a triable issue as to the actual motivation of the College, even if the evidence is "very little." *Godwin*, 150 F.3d at 1221 (internal quotation marks and citation omitted) (explaining that direct evidence is that which proves discriminatory animus without inference or presumption).

The court first considers plaintiff's indirect evidence. First, with regard to the claim that plaintiff inappropriately vented his frustrations with the College's administration during a visit by an accreditation organization, President Cheung testified that when the Western Association of Schools and Colleges ("WASC") visited the College as part of the accreditation process in October of 2010, plaintiff inappropriately expressed his opinion that the College was not providing his department with sufficient faculty. (Cheung Decl. ¶ 13.)

Plaintiff responds that his observations were well founded and states that he "did not act inappropriately in front of WASC, nor did [he] tell Dean Hawkins that [he] acted inappropriately." (Brazill Decl. ¶ 7.) He offers evidence that the administration's failure to provide enough resources to hire sufficient faculty to support the College's experiential education program stymied its full development. (Brazill Dep. at 163:6–164:9.) Dean Hawkins likewise testified that he did not believe that the administration had given him as much support in hiring faculty as they should have, even though additional faculty were needed to conduct the program. (Hawkins Dep. at 36:14–24.) Plaintiff also explains that while meeting with WASC, he merely agreed with the statement of the director of experiential education who reported that the College did not have adequate resources to meet the needs of fourth-year students.[13] (Brazill Decl. ¶ 7.)

Second, with regard to the claim that plaintiff created a conflict of interest by hiring faculty members, whose work plaintiff oversaw at the College, to work in his

13. Defendants' objections on the grounds of foundation, relevance, and improper opinion testimony to the evidence underlying this fact are overruled.

private pharmacy, plaintiff notes that other faculty were working additional jobs. In response, the College explains that none of those other moonlighting opportunities created the conflict that concerned the College administration, namely that the faculty member would be "evaluating the chair and getting paid by the chair to work in his or her pharmacy." (Hawkins Dep. at 98:19–20; *see id.* at 97:23–98:16.) It does not appear, however, that the College attempted other, less drastic, steps, such as instructing plaintiff not to employ the faculty members in his pharmacy, prior to deciding to terminate him.

Third, with regard to the claim that plaintiff retaliated against an employee, according to President Cheung, plaintiff had asked another faculty member, Dr. Grant Lackey, about investing in his pharmacy. (Cheung Decl. ¶ 13.) After Lackey declined to invest, the College believed that plaintiff began retaliating against him by reporting two incidents in June 2011 to the College's human resources department involving allegedly inappropriate conduct by Lackey. (Vera Decl. ¶ 7.) The director of human resources at the College, Jasmin Vera, also stated that plaintiff was in her "office at least once per week, if not more, wanting Dr. Lackey to be fired, or some other form of punitive action taken against him." (*Id.*)

After investigating Lackey's purported misconduct, Vera found the claims against him to be unsubstantiated and concluded that plaintiff was retaliating against him. (*Id.* ¶ 8.) She also reported that she learned in early July 2011 that although another faculty member purportedly told an off-color joke, plaintiff did not report that incident and chose not to reprimand that individual. (*Id.* ¶ 9.)

Plaintiff explains that the potential partnership between them did not affect his treatment of Lackey, especially because Lackey was still considering becoming a partner two days before plaintiff's termination.[14] (Brazill Decl. ¶ 9.) Plaintiff further explains that he only reported Lackey's making offensive jokes to the College's resources department after Dean Hawkins told him to report the conduct.[15] (*Id.* ¶ 8.) He also denies complaining to Vera on a weekly basis about Lackey or requesting that he be fired or investigated. (*Id.*)

Plaintiff's account of his treatment of Lackey could give rise to the inference that, contrary to the College's contention, plaintiff did not treat Lackey differently than any other faculty members. Such an inference creates a genuine issue of fact as to whether the College's final reason for firing plaintiff is worthy of credence.

■ " '[F]undamentally different justifications for an employer's action ... give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason.' " *Aragon v. Republic*

14. Defendants' objections on the grounds of foundation, relevance, hearsay, and improper opinion testimony to the evidence underlying this fact are overruled. The sham affidavit rule does not apply here because there is no inconsistency between plaintiff's testimony that he and his wife had decided that Lackey would be an inappropriate business partner, (Brazill Dep. at 187:17–24), and plaintiff's later testimony that he never advised Lackey that he had rejected him as a partner and that their discussions stopped after plaintiff was terminated, (Brazill Decl. ¶ 9). contention, plaintiff did not treat Lackey differently than any other faculty members. Such an inference creates a genuine issue of fact as to whether the College's final reason for firing plaintiff is worthy of credence.

15. Defendants' objections on the grounds of foundation, relevance, hearsay, and improper opinion testimony to the evidence underlying this fact are overruled.

Silver State Disposal Inc., 292 F.3d 654, 661 (9th Cir.2002) (quoting *Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1994)). Similarly, the College's inclusion of a potentially untenable explanation to its reasons for terminating plaintiff casts doubt over the overall credibility of its reasons. It gives rise to the inference that the College is attempting to dissemble a discriminatory motive for terminating plaintiff with other plausible justifications.

In other words, it suggests pretext. Plaintiff's circumstantial evidence is thus sufficient to raise a genuine issue of material fact whether the College's nondiscriminatory explanations were the true reason for his termination or whether they were merely guises for a discriminatory motive.

Even if plaintiff had not produced sufficient circumstantial evidence of pretext to create a triable issue as to the actual motivation of the College, he has presented sufficient direct evidence of discrimination to do so. As direct evidence of discrimination, plaintiff points to his testimony that he learned from two administrative assistants that President Cheung had stated in a meeting that he preferred working with younger workers who had energy and could keep up with him. (Brazill Dep. at 74:11–20.) Brazill did not personally hear President Cheung state this alleged preference. (*Id.* at 74:21–75:1.) Plaintiff also testified that Dean Hawkins told him that President Cheung felt that one of Dean Hawkins' assistants was too old and attempted to replace her with a younger assistant. (*Id.* at 79:4–18.) He did not hear President Cheung say that Dean Hawkins' assistant was too old. (*Id.* at 79:19–21.)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 773 (9th Cir.2002); *see* Fed. R. Civ. Pro. 56(e). Plaintiff's testimony regarding what the administrative assistants told him constitutes double hearsay. While President Cheung's statement may fall within an exception to the hearsay rule, *see* Fed. R.Evid. 801(d)(2)(D) (statement is not hearsay when offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"), the assistants' recounting of President Cheung's alleged bias does not.

The other evidence, however, could be presented in admissible form at trial. In *Nesbit v. Pepsico, Inc.,* 994 F.2d 703 (9th Cir.1993), the Ninth Circuit held that a supervisor's comment that " '[w]e don't necessarily like grey hair" in a meeting "was uttered in an ambivalent manner and was not tied directly to [the plaintiff's] termination" and thus "[wa]s at best weak circumstantial evidence of discriminatory animus" toward the plaintiff. *Nesbit,* 994 F.2d at 705; *see also Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 919 (9th Cir.1996) (supervisor's comment that he intended to get rid of "old timers" did not create an inference of age discrimination because it was not directed at plaintiff and was ambiguous because "it could refer as well to longtime employees or to employees who failed to follow directions as to employees over 40").

In contrast, while here President Cheung's comment about Dean Hawkins' assistant and his attempt to replace her with a younger worker are not directly tied to plaintiff's termination, they constitute unambiguous evidence of discriminatory animus connected to employment decisionmaking, rather than mere evidence of discrimination "in the air." *See Harris,* 56 Cal.4th at 231, 152 Cal.Rptr.3d 392, 294 P.3d 49. Significantly, President Cheung is the College official who made the decision to terminate plaintiff. (Cheung Decl. ¶¶ 13, 16.) Such direct evidence is suffi-

cient to create a triable issue whether the College's articulated reason for terminating plaintiff is pretextual. *See Godwin,* 150 F.3d at 1221 (9th Cir.1998) ("When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial. As we said in *Lindahl,* it need be 'very little.' ").

Plaintiff has established a disputed issue of fact, through either indirect or direct admissible evidence, as to whether he was terminated because of his age. Accordingly, the College's motion for summary judgment as to plaintiff's claims for age discrimination under the ADEA and FEHA must be denied.

B. *FCA: Retaliation*

The FCA protects employees from being "discharged, demoted, ... or in any other manner discriminated against in the terms and conditions of employment ... because of lawful acts done by the employee ... in furtherance of an [FCA] action ... or other efforts to stop [one] or more violations of [the FCA]." 31 U.S.C. § 3730(h).[16] "An FCA retaliation claim requires proof of three elements: '(1) the employee must have been engaging in conduct protected under the Act; (2) the employer must have known that the employee was engaging in such conduct; and (3) the employer must have discriminated against the employee because of her protected conduct.' " *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1060 (9th Cir.2011) (quoting *U.S. ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir.1996)); *see Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir.2008).

As evidence that he engaged in protected conduct under the FCA, plaintiff states that he spoke several times with Dean Hawkins about the practice of College students using federal financial aid they received to pay for their expenses at Davenport University to pay for College tuition and told the Dean that the practice is "illegal." (Brazill Decl. ¶ 15; Brazill Dep. at 193:7–9.) He also asked the College's Associate Dean, Cyndi Porter, and employee Patty Erck "what they thought about students using Davenport money to pay for College ... expenses."[17] (Brazill Decl. ¶ 15; Brazill Dep. at 67:19–68:21, 71:2–72:14.) He asked the same to Registrar Lisa Erck. (Brazill Decl. ¶ 15; Brazill Dep. at 154:16–20.)

Assuming that these actions constitute protected activity under the FCA, plaintiff has not established a prima facie case of retaliation. Because plaintiff was fired two months after he last approached Dean Hawkins about College students using Davenport University financial aid to pay for College expenses (Brazill Decl. ¶ 15.), he contends that the temporal proximity between his protected activity and

16. Congress recently made several changes to the retaliation provision of the FCA. Effective May 20, 2009, the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, § 4(d), 123 Stat 1617 (2009), amended § 3730(h) to protect employees from being "discharged, demoted, ... or in any other manner discriminated against in the terms and conditions of employment ... because of lawful acts done by the employee ... in furtherance of other efforts to stop [one] or more violations of this subchapter." In an apparent measure to correct the odd choice of the word "other," the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 1079A(c)(1), 124 Stat. 1376 (2010), again amended § 3730(h) to protect employees who have acted "in furtherance of a[] [FCA] action" or that have taken "other efforts" to stop violations of the FCA.

17. Defendants' objections on the grounds of hearsay, foundation, and relevance to the evidence underlying this fact are overruled.

his termination is *alone* sufficient to raise an inference that he was terminated because of any protected activity. (*See* Opp'n at 13:23–25.) Plaintiff is wrong.

In the retaliation context, the Ninth Circuit has held that when adverse employment decisions are taken within a close proximity after protected activity has been made, causation may be inferred. *See, e.g., Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir.2008); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir.2000). The Ninth Circuit has found a prima facie case of causation, for example, when adverse employment actions were taken more than two months after an employee filed an administrative complaint, and more than a month and a half after the employer's investigation ended. *Davis,* 520 F.3d at 1094. There is, however, an exception to this general principle: "[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Thomas v. City of Beaverton,* 379 F.3d 802, 812 n. 4 (9th Cir.2004) ("The employer's awareness of the protected activity is also important in establishing a causal link."); *Maarouf v. Walker Mfg. Co.,* 210 F.3d 750, 755 (7th Cir.2000) (mere proximity between complaints of discrimination and termination insufficient to avoid summary judgment on plaintiff's retaliation claim where plaintiff could not raise a disputed issue of fact as to whether the decision maker was aware of his discrimination allegations at the time); *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 797 (9th Cir.1982) (no causal link where the decision maker did not know that plaintiff had recently engaged in protected activity).

There is no evidence from which a trier of fact could find that plaintiff's alleged protected activity played any role in the decision to terminate him. President Cheung was the person with the decision-making power over whether plaintiff kept his position. (*See* Cheung Decl. ¶¶ 13, 16 (stating that he made the decision to terminate plaintiff).) The undisputed evidence is that plaintiff never addressed his concerns about the tuition scheme to President Cheung or Vice President Fong. (Brazill Dep. at 141:7–13, 142:4–8; Cheung Decl. ¶ 12; Fong Decl. ¶¶ 3–4.) Dean Hawkins testified that he could not even recall whether plaintiff brought his concerns to his attention. (Hawkins Dep. at 50:3–5.) President Cheung and Vice President Fong both testified that they were not aware that plaintiff had expressed such concerns to Dean Hawkins or anyone else and that Dean Hawkins did not tell them that plaintiff expressed such concerns. (Cheung Decl. ¶ 12; Fong Decl. ¶ 5.) Thus, there is no evidence to oppose President Cheung's testimony that when he terminated plaintiff he did not know about plaintiff's reports to Dean Hawkins that the practice of some students of using Davenport student aid to pay for College expenses is illegal.

Further, plaintiff has not offered any theory to explain how President Cheung learned of his complaints, except to assert that his lack of knowledge is "implausible," (Opp'n at 13:13), and that plaintiff witnessed Vice President Fong telling students that Davenport was an alternate way to pay for the College, (Brazill Dep. at 151:18–25). Plaintiff has also failed to offer any "non-speculative evidence of specific facts" to give rise to any inference that President Cheung knew about his complaints. *Cafasso,* 637 F.3d at 1061. While it is plausible that President Cheung somehow found out about plaintiff's complaints, plaintiff has offered no evidence to give

rise "to a reasonable inference that it did in fact occur." *Id.* He did not rebut the evidence showing that President Cheung did not have knowledge that plaintiff was engaged in protected conduct and thus cannot rely on temporal proximity alone to create a genuine issue of fact as to causation. Accordingly, the College's motion for summary judgment as to plaintiff's claim for retaliation under the FCA must be denied.

C. *Wrongful Termination in Violation of Public Policy*

Because the court concludes that genuine issues of material facts exist regarding plaintiff's age discrimination claims under the ADEA and FEHA, the court will deny the College's motion for summary judgment as to plaintiff's claim for wrongful termination in violation of public policy. *See Earl,* 658 F.3d at 1118 ("Because [plaintiff's] discrimination claim under FEHA survives summary judgment, so too does her claim for wrongful termination in violation of public policy.").

IT IS THEREFORE ORDERED that California Northstate College of Pharmacy, LLC's motion for summary judgment be, and the same hereby is, DENIED as to plaintiff's ADEA, FEHA, and wrongful termination in violation of public policy claims and GRANTED as to plaintiff's FCA claim.

IT IS FURTHER ORDERED that California Northstate University, LLC's motion for summary judgment be, and the same hereby is, GRANTED.